UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CASE NO. 1:21-CR-00118-RCL |
| | : | |
| | : | |
| LISA EISENHART, | : | |
| | : | |
| | : | |
| DEFENDANT. | : | |

RESPONSE TO DEFENDANT EISENHART'S MOTION FOR RELIEF FROM
CONFINEMENT CONDITIONS OR FOR TRANSFER TO A MORE SUITABLE JAIL
FACILITY

The United States of America, by and through its attorney the United States Attorney for

the District of Columbia, respectfully responds to Defendant Eisenhart's Motion for Relief from

Confinement Conditions or for Transfer to a More Suitable Jail Facility (ECF 40). The Court

ordered the government to respond by noon on March 9, 2021. (ECF 42 (minute order)). The

Court further ordered the parties to be prepared to address (1) Whether the Court has jurisdiction

to consider the defendant's motion while her interlocutory appeal of her detention order is

pending; (2) Whether the defendant's motion presents a legal question cognizable by the Court in

this criminal case; and, (3) Whether 18 U.S.C. § 3142(i)(2) prohibits the Court from granting

defendant the relief she seeks. (ECF 42).

Defendant Eisenhart moved this Court for relief from confinement conditions or transfer

to a different jail facility but cites no statute or case law authorizing this Court to intercede in the

Department of Correction's authority and discretion over the defendant's conditions of

confinement. The government submits that this Court has jurisdiction to review constitutional

challenges to conditions of confinement under the standards set forth by the Supreme Court in

*Bell v. Wolfish,* but defendant Eisenhart fails here to state a constitutional claim in her Motion (ECF 40). As to non-Constitutional matters, the Bail Reform Act, 18 U.S.C. § 3142 et seq., clearly delineates the content of the Court's detention order in Section 3142(i), which by its plain text, limits the Courts authority to direct specific conditions of detention to (a) separation, when practicable, from those serving sentences (b) reasonable opportunity for private consultation with counsel and (c) orders to produce the defendant for court appearances.[1] However, the government does not interpret Section 3142(i)(2) to prohibit the Court from granting the relief she seeks if she presents a constitutional challenge to her conditions of confinement. Accordingly, because defendant Eisenhart has failed to present a legally cognizable constitutional challenge to her conditions of confinement, her motion should be denied.

**(1)  Whether the Court has jurisdiction to consider the defendant's motion while her interlocutory appeal of her detention order is pending**

The Court need not reach this question because, as explained below, defendant Eisenhart has not presented a legal question cognizable by the Court in this criminal case because she has not raised a constitutional challenge to her conditions of confinement.

Nonetheless, if the Court reaches this question, the government submits that this court maintains jurisdiction over constitutional claims relating to conditions of confinement as the defendant has not raised those matters on appeal. The filing of a notice of appeal, whether from a true final judgment or from a decision within the collateral order exception, "is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident*

---

[1] The flush language of 18 U.S.C. § 3142(i) also allows the Court to order temporary release of the person into the custody of the United States marshal or another person, "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Defendant Eisenhart has not moved for relief under this provision.

*Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Although the defendant's current appeal of her detention status could moot the instant motion, should the Court of Appeals order the defendant to be released, the subject of the appeal is nonetheless distinct from the subject of the instant motion. Defendant Eisenhart did not raise her conditions of confinement and administrative segregation in her appeal and so those matters are not before the Court of Appeals. Accordingly, the appeal does not "divest[] the district court of its control over [that] aspect[] of the case[.]" *Id.*

      The government notes that if the Court disagrees, it may still address the motion pursuant to Fed. R. Crim. P. 37(a), which allows that on a timely motion "for relief that the court lacks authority to grant because of an appeal ... the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Several District Courts have recently addressed similar issues with respect to compassionate release motions filed during pending appeals. *See United States v. Jackson*, 468 F. Supp. 3d 59, 64-65 (D.D.C. 2020), reconsideration denied, No. 19-CR-00347-TNM-1, 2020 WL 6445867 (D.D.C. Nov. 3, 2020) (addressing defendant's motion for compassionate release filed while appeal of sentence was pending before Court of Appeals); *cf. United States v. Johnson,* 464 F.Supp. 3d 22, 34 n.7 (D.D.C. 2020) (noting that courts have consistently held that district courts lack authority to grant motions for compassionate release pursuant to section 3582(c) while an appeal is pending).

**(2)   Whether the defendant's motion presents a legal question cognizable by the Court in this criminal case;**

      Courts in this District have differed as to how the District Court has jurisdiction to determine specific conditions of confinement once a detention determination has been made. *See e.g. United States v. Medina,* 628 F. Supp. 2d 52, 55 (D.D.C. 2009) (declining to construe a similar motion as a habeas petition in light of the court's power to "remedy[ ] constitutional

violations" such as those alleged by the defendants) (Lamberth, J.); *cf. United States v. Rojas-Yepes*, 630 F. Supp. 2d 18, 20 (D.D.C. 2009) (Once a defendant is detained, however, the most appropriate means for a challenge to the conditions of his confinement is either a habeas corpus petition or an action brought under 42 U.S.C. § 1983.). This Court has previously found that it has jurisdiction to review a constitutional claim that the Department of Corrections ("DOC") was violating a defendant's constitutional right to counsel. *Medina,* 628 F. Supp. 2d at 55. In the same opinion, this Court declined to address the defendant's request (*e.g.*, the format of discovery) that did not rise to a constitutional dimension. *Id.* at 58 n. 12.

If a proper constitutional claim is raised, the standard applicable to conditions of confinement claims by pretrial detainees is enunciated in *Bell v. Wolfish*, 441 U.S. 520 (1979). The proper inquiry is whether those conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt. *Id.* at 535. However, not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. *Id*. at 537. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at 539. This is because the Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. *Id.* at 540. Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned. *Id.* at 539 n. 21 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). If an institutional restriction on a pretrial detainee infringes a specific constitutional guarantee, "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security[.]' *Id.* at 547. The *Bell* Court further instructed that, when reviewing institutional restrictions challenged by inmates,

4

courts must heed our warning that "[such] considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Id.* at 540 n. 23 (internal citation omitted); *see also Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14, (1981) (noting that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators").

Many Courts have addressed the specific issue of whether a prisoner has a due process right *not* to be in segregation. The D.C. District Court found in *Rojas-Yepes* that the "case law is clear that the Due Process Clause confers upon a prisoner neither a procedural nor substantive due process right to a particular placement or classification." *Rojas-Yepes,* 630 F. Supp. 2d at 22. *Rojas-Yepes* relied on *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled in part by Sandin v. Conner*, 515 U.S. 472, (1995) and *Hatch v. District of Columbia*, 184 F.3d 846, 849–50 (D.C. Cir. 1999).[2] *Hewitt* explains:

> While no State may "deprive any person of life, liberty, or property, without due process of law," it is well settled that only a limited range of interests fall within this provision. Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States. Respondent argues, rather weakly, that the Due Process Clause implicitly creates an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters. While there is little question on the record before us that respondent's confinement added to the restraints on his freedom, we think his argument seeks to draw from the Due Process Clause more than it can provide.

459 U.S. at 466-67; *see also Marshall v. Reno*, 915 F. Supp. 426, 431 (D.D.C. 1996) ("[T]he Due Process Clause of the Fourteenth Amendment does not itself give rise to a protected interest in being confined in the general prison population."); *James–Bey v. Freeman*, 638 F. Supp. 758,

---

[2] *Hatch v. District of Columbia* held that, consistent with *Wolff v. McDonnell*, 418 U.S. 539 (1974), D.C. prison regulations may give rise to constitutionally protected liberty interested.

761 (D.D.C. 1986) ("The Due Process Clause alone does not protect against transfer of a prisoner to a particular penal institution, even if the confinement conditions at the new institution are substantially more severe.").

Accordingly, while the government agrees that the Court has jurisdiction to review constitutional claims relating to conditions of confinement, defendant Eisenhart has failed to allege a cognizable constitutional challenge to her conditions of confinement. Further, to the extent the Court finds she has made out a constitutional claim, the Court must grant great deference to the Department of Corrections and any restriction that is reasonably related to a legitimate governmental objective, without more, will not satisfy the requirements of *Bell v. Wolfish,* 441 U.S. at 539. Absent more, placement outside of the general population does not constitute a constitutional violation.

The U.S. Attorney's Office has consulted with the Department of Corrections and understands that the Department of Corrections intends to separately file regarding defendant Eisenhart's specific conditions of confinement.

**(3)   Whether 18 U.S.C. § 3142(i)(2) prohibits the Court from granting defendant the relief she seeks.**

Finally, the Court inquires as to whether 18 U.S.C. § 3142(i)(2) prohibits the Court from granting the defendant the relief she seeks.

By its terms, Section 3142(i)(2) directs that the Court's detention order "shall" "direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal[.]" The undersigned is unaware of case law addressing the interplay between Section 3142(i)(2) and a Court's authority to order a pre-trial detainee to

be held in general population or administrative segregation.[3] However, the government notes that even if the defendant Eisenhart's segregation is a result, solely, of her separation from those awaiting or serving sentences, thereby implicating the provisions of Section 3142(i)(2), the statutory caveat "to the extent practicable," suggests that the provision itself is not an absolute bar if the Court otherwise had authority and basis to grant the relief sought.[4]

However, a plain reading of Section 3142(i) of the Bail Reform Act confirms the Court's narrow statutory authority with respect to conditions of confinement. Section 3142(i) specifically articulates that "[i]n a detention order . . . the judicial office *shall*"

> (1) include written findings of fact and a written statement of the reasons for the detention;
> (2) direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;
> (3) direct that the person be afforded reasonable opportunity for private consultation with counsel; and
> (4) direct that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.
>> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

---

[3] Except that the government notes that in *United States v. Peter Gotti,* the Defendant cited to 18 U.S.C. § 3142(i) in his motion for an order releasing him into general population. *See United States v. Gotti*, 2d Cir. No. 02-1521, *available at* 2002 WL 32389771, p. 12. In that case, the District court concluded that if it so held, "it would be the first case that would ever make that determination." *Id.* at 13. The Court of Appeals for the Second Circuit dismissed the appeal without addressing the argument, finding the Government's appeal to be moot after defendant Gotti was released from administrative confinement into general population. *United States v. Ciccone*, 312 F.3d 535, 544 (2d Cir. 2002).

[4] In other words, if the Court ordered the defendant to be placed in general population based on a constitutional violation and compliance with the order required the DOC to place Ms. Eisenhart with persons who were awaiting or serving sentences, then it would not be "practicable" for the DOC to separate the defendant from those awaiting or serving sentences while also complying with the Court's order under its constitutional authority.

18 U.S.C. § 3142(i) (emphasis added). By a plain reading, the Bail Reform Act provides no statutory basis to direct any specific condition of confinement, including transfer to a different facility, that is not explicitly enumerated in Section 3142(i).

WHEREFORE, for the foregoing reasons, because defendant Eisenhart has failed to make out a legally cognizable constitutional challenge to her conditions of confinement and because the Court does not have a statutory basis to grant the relief requested, the United States respectfully requests that this Court deny Defendant Eisenhart's Motion for Relief from Confinement Conditions or for Transfer to a More Suitable Jail Facility (ECF 40).

Respectfully submitted,

Channing D. Phillips
Acting U.S. Attorney
D.C. Bar No. 415793

/s/ Leslie A. Goemaat
LESLIE A. GOEMAAT
MA Bar No. 676695
Assistant United States Attorney
Fraud Section
U.S. Attorney's Office
555 4th Street, N.W., Room 5840
Washington, D.C.  20530
Office: 202-803-1608
Email: Leslie.Goemaat@usdoj.gov

/s/ Ahmed Baset
AHMED BASET
IL Bar 630-4552
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
Public Corruption & Civil Rights Section
555 4th Street, N.W.
Washington, D.C. 20530
Email: ahmed.baset@usdoj.gov
Phone: 202-252-7097

/s/ Justin Sher
JUSTIN SHER
D.C. Bar No. 974235
Trial Attorney
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20004
Office: 202-353-3909
Justin.Sher@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing motion to be served

by electronic means, through the Court's CM/ECF system, upon all parties of record.

<u>/s/ Leslie A. Goemaat</u>
LESLIE A. GOEMAAT
Assistant United States Attorney