AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By *Vannie Hune*
Deputy Clerk

| United States of America | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ERIC GAVELEK MUNCHEL | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Eric Gavelek Munchel                                                                                          ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:
Violations of 18 U.S.C. 1752(a) and 40 U.S.C. 5104(e)(2)

G. Michael Harvey
2021.01.10 23:14:15
-05'00'

Date:   January 10, 2021

*Issuing officer's signature*

City and state:   Washington D.C.

Hon. G. Michael Harvey, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* 1/10/2021 , and the person was arrested on *(date)* 1/10/2021 at *(city and state)* _____ . |
| Date: 1/10/2021                    *Arresting officer's signature* |
| Christopher R. Potts, SA FBI |
| *Printed name and title* |

MAGISTRATE JUDGE FRENSLEY COURTROOM MINUTES FOR CRIMINAL PROCEEDINGS

U.S.A. v. Eric Munchel _____, No. 3:21-mj-2668

**ATTORNEY FOR GOVERNMENT:** Ben Schrader _____

**ATTORNEY FOR DEFENDANT:** Caryll Alpert _____ (AFPD)  Panel  Retained

**PRETRIAL SERVICES/PROBATION OFFICER:** Kim Haney _____

**INTERPRETER NEEDED?**  YES (NO)  LANGUAGE/INTERPRETER: _____
☐ PRESENT  ☐ ON TELEPHONE

☑ INITIAL APPEARANCE  ☐ ON A SUMMONS  ☑ ARRESTED ON: 1.10.21
  DEFENDANT HAS A COPY OF:
  ☑ Complaint ☐ Indictment ☐ Information ☐ Supervised Release Pet. ☐ Other _____
  ☑ Defendant advised of the charges and the maximum penalties
  ☑ Defendant has a copy of notice of rights
  ☑ Defendant advised of right to counsel          ☐ Counsel retained
  ☐ Defendant sworn and/or certified under penalty of perjury and financial affidavit filed  ☑ FPD Appointed
  ☑ Defendant advised of right to silence
  ☐ Defendant advised of right to **Consular notification**
  ☑ Government motion for detention
  ☑ Defendant temporarily detained          ☐ ICE detainer on defendant
  ☐ Defendant waived detention hearing       ☐ Defendant reserved right to hearing in future
  ☐ Defendant to remain in Federal custody    ☐ Defendant to be returned to State custody
  ☑ Defendant advised of right to preliminary hearing  ☐ Defendant waived preliminary hearing
  ☐ Defendant ordered to psychological/psychiatric evaluation
  ☐ Defendant to remain on current conditions of **supervised release**
  ☐ Defendant released on:
    ☐ Own recognizance with conditions of release  ☐ standard  ☐ special
    ☐ Appearance bond in the amount of: _____
    ☐ Property bond [description of property]: _____
    ☐ Performance bond [as set out in conditions of release]
  ☐ RULE 5 - Defendant advised of right to identity hearing  ☐ Defendant waived identity hearing
  ☐ RULE 5 - Defendant reserved right to have preliminary hearing in District of Prosecution
  ☐ RULE 5 - Defendant elected to have detention hearing in District of Prosecution
  ☐ RULE 5 - DEFENDANT ADVISED OF RIGHT TO RULE 20 TRANSFER

☑ PRELIMINARY/DETENTION/ARRAIGNMENT CONTINUED TO: 1.19.21 at 9:30 am

☐ GRAND JURY WAIVED IN OPEN COURT   [Defendant sworn and advised of rights by Court]

☐ ARRAIGNMENT
  ☐ Defendant acknowledges he/she has copy of Indictment/Information  ☐ Court advised Def. of penalties
  ☐ Defendant waives reading thereof     ☐ Indictment/Information read to defendant by Judge
  **PLEA:** ☐ GUILTY  ☐ NOT GUILTY    ☐ Defendant intends to plead guilty and case referred to DJ

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By Vanina Hine
Deputy Clerk

**DATE:** 1.11.21   **TOTAL TIME:** 10 minutes
**BEGIN TIME:** 4:36 pm   **END TIME:** 4:46 pm
*Digitally Recorded*

Form Revised 2/9/2018

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

By *Vanrua Thurn*

Deputy Clerk

UNITED STATES OF AMERICA )
)
v. )
)
ERIC MUNCHEL )

NO. 3:21-mj-2668

**O R D E R**

On the basis of Defendant's affidavit in this cause, the Court determines

that Defendant:

☐    is financially able to employ counsel and, therefore, denies his application
for appointment of counsel at government expense.

X    is financially unable to employ counsel and appoints the Office of the
Federal Public Defender to represent him.

X    is financially unable to pay the fee of any witness and pursuant to Rule
17(b), of the Federal Rules of Criminal Procedure, the Clerk shall issue a
subpoena for any witness, PROVIDED that Defendant and his counsel shall
submit subpoenas only for those witnesses whose presence is necessary
to present an adequate defense to the charge or charges.

☐    Upon Motion of the Government, the Court may order repayment or
partial repayment from Defendant for the attorney and witness fees for
these services should it appear Defendant has such ability at a later time.

It is so ORDERED.

Dated:    January 11, 2021

JEFFERY S. FRENSLEY
United States Magistrate Judge

cc:    United States Attorney
Federal Public Defender
United States Probation
United States Marshal

# UNITED STATES DISTRICT COURT
## for the Middle District of Tennessee

United States of America

**NOTICE**

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
by _Vanine Hune_
Deputy Clerk

v.

Eric Munchel

Case No. 3:21-mj-2668

---

Type of case:      ☐ Civil      ☒ Criminal

---

☒ TAKE NOTICE that a proceeding in this case has been set for the place, date, and time set forth below:

Place    Video conference  at U.S. Courthouse, 801 Broadway, Nashville, TN 37203

Room No. _____          Date  1.19.21          Time  9:30 AM

Type of Proceeding          Preliminary and Detention Hearing

---

☐ TAKE NOTICE that a proceeding in this case has been continued as indicated below:

Place _____

*Date and time previously scheduled:*                    *Continued to:*

Date _____  Time _____          Date _____  Time _____

JEFFERY S. FRENSLEY

U.S. Magistrate Judge or Clerk of Court

Date  1.11.21          Surabhi Morrissey

(by) Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By _Vanine Hucher_
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 3:21-mj-2668 |
| | ) | Magistrate Judge Frensley |
| | ) | |
| ERIC MUNCHEL | ) | |
| Defendant | ) | |

**O R D E R**

Pursuant to Rule 5(f) of the Federal Rules of Criminal Procedure, as amended by Due

Process Protections Act, the Court confirms the United States' obligation to produce information

and material that is exculpatory within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963)

and its progeny, and orders it to do so reasonably promptly upon discovery, as required by Local

Rule 16.01(a)(3). Failure to produce exculpatory evidence and material in a timely manner may

result in consequences, including, but not limited to, exclusion of evidence, adverse jury

instructions, dismissal of charges, contempt proceedings, or other sanctions by the Court.

IT IS SO ORDERED.

JEFFERY S. FRENSLEY
United States Magistrate Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By *Vanwe Houral*
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:21-mj-2668 |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| ERIC GAVELEK MUNCHEL | ) | |

## UNOPPOSED MOTION TO CONTINUE
## PRELIMINARY AND DETENTION HEARINGS

This matter currently is scheduled for preliminary and detention hearings on Tuesday, January 19, 2021.  Without opposition from the government, Mr. Munchel asks the Court to postpone this matter to provide additional time for the defendant to prepare for the hearing.

In support of this motion, defense counsel would show the following: Although defense counsel had hoped to proceed with this matter on Tuesday, January 19, 2021, defense counsel is still gathering information and needs additional time to prepare for the detention hearing.  Assistant United States Attorney Ben Schrader advises that he has no opposition to this request.  Both parties have availability for a hearing on Friday, January 22, 2021, if that date is available to the Court.

Respectfully submitted,


/s/ *Caryll S. Alpert*
CARYLL S. ALPERT (BPR# 017021)
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, TN  37203
615-736-5047
E-mail:  Caryll_Alpert@fd.org

Attorney for Eric Gavelek Munchel

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing Motion To Continue with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to John Benjamin Schrader, Assistant United States Attorney, 110 Ninth Avenue South, Suite A961, Nashville, TN 37203.

/s/ *Caryll S. Alpert*
CARYLL S. ALPERT

2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

By _Vanice Tushe_
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:21-mj-2668 |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| ERIC GAVELEK MUNCHEL | ) | |

## UNOPPOSED MOTION TO CONTINUE
## PRELIMINARY AND DETENTION HEARINGS

This matter currently is scheduled for preliminary and detention hearings on Tuesday, January 19, 2021.  Without opposition from the government, Mr. Munchel asks the Court to postpone this matter to provide additional time for the defendant to prepare for the hearing.

In support of this motion, defense counsel would show the following: Although defense counsel had hoped to proceed with this matter on Tuesday, January 19, 2021, defense counsel is still gathering information and needs additional time to prepare for the detention hearing.  Assistant United States Attorney Ben Schrader advises that he has no opposition to this request.  Both parties have availability for a hearing on Friday, January 22, 2021, if that date is available to the Court.

Respectfully submitted,


/s/ *Caryll S. Alpert*
CARYLL S. ALPERT (BPR# 017021)
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, TN  37203
615-736-5047
E-mail:  Caryll_Alpert@fd.org

Attorney for Eric Gavelek Munchel


## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing Motion To Continue with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to John Benjamin Schrader, Assistant United States Attorney, 110 Ninth Avenue South, Suite A961, Nashville, TN 37203.

/s/ *Caryll S. Alpert*
CARYLL S. ALPERT


2

MAGISTRATE JUDGE FRENSLEY COURTROOM MINUTES FOR CRIMINAL PROCEEDINGS

U.S.A. v. _Eric Munchel_____, No. _21-mj-2668___

**ATTORNEY FOR GOVERNMENT:** _Ben Schrader / Ahmed Baset (DC) / Joshua Kurzman_

**ATTORNEY FOR DEFENDANT:** _Caryll Alpert / Henry Martin_ (AFPD)  Panel  Retained

**PRETRIAL SERVICES/PROBATION OFFICER:** _Kimberly Haney_

**INTERPRETER NEEDED?**  YES  (NO)  LANGUAGE/INTERPRETER: _____
☐ PRESENT  ☐ ON TELEPHONE

☐ **INITIAL APPEARANCE** ☐ **ON A SUMMONS** ☐ **ARRESTED ON:** _____
    DEFENDANT HAS A COPY OF:
    ☑ Complaint *superseding* ☐ Indictment ☐ Information ☐ Supervised Release Pet. ☐ Other _____
    ☑ Defendant advised of the charges and the maximum penalties
    ☐ Defendant has a copy of notice of rights
    ☐ Defendant advised of right to counsel                           ☐ Counsel retained
    ☐ Defendant sworn and/or certified under penalty of perjury and financial affidavit filed   ☐ FPD Appointed
    ☐ Defendant advised of right to silence
    ☐ Defendant advised of right to **Consular notification**
    ☐ Government motion for detention
    ☐ Defendant temporarily detained                        ☐ ICE detainer on defendant
    ☐ Defendant waived detention hearing                   ☐ Defendant reserved right to hearing in future
    ☐ Defendant to remain in Federal custody               ☐ Defendant to be returned to State custody
    ☐ Defendant advised of right to preliminary hearing    ☐ Defendant waived preliminary hearing
    ☐ Defendant ordered to psychological/psychiatric evaluation
    ☐ Defendant to remain on current conditions of **supervised release**
    ☐ Defendant released on:
        ☐ Own recognizance with conditions of release  ☐ standard  ☐ special
        ☐ Appearance bond in the amount of: _____
        ☐ Property bond [description of property]: _____
        ☐ Performance bond [as set out in conditions of release]
    ☑ **RULE 5** - Defendant advised of right to identity hearing   ☑ Defendant waived identity hearing
    ☐ **RULE 5** - Defendant reserved right to have preliminary hearing in District of Prosecution
    ☐ **RULE 5** - Defendant elected to have detention hearing in District of Prosecution
    ☐ **RULE 5** - DEFENDANT ADVISED OF RIGHT TO RULE 20 TRANSFER

I HEREBY CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
_Vanna Hana_
Deputy Clerk

☐ **PRELIMINARY/DETENTION/ARRAIGNMENT CONTINUED TO:** _____

☐ **GRAND JURY WAIVED IN OPEN COURT**     [Defendant sworn and advised of rights by Court]

☐ **ARRAIGNMENT**
    ☐ Defendant acknowledges he/she has copy of Indictment/Information  ☐ Court advised Def. of penalties
    ☐ Defendant waives reading thereof               ☐ Indictment/Information read to defendant by Judge
    **PLEA:** ☐ **GUILTY**  ☐ **NOT GUILTY**        ☐ Defendant intends to plead guilty and case referred to DJ

**DATE:** _1.22.21_          **TOTAL TIME:** _5 hours, 13 minutes_
**BEGIN TIME:** _2:08 pm_    **END TIME:** _7:21 pm_
_**Digitally Recorded**_

Form Revised 2/9/2018                Page 1 of _2_

UNITED STATES OF AMERICA v. _Eric Munchel_                    NO. _21-mj-2668_

☑ RULE 5 IDENTITY HEARING
    ☐ Held, defendant found to be person named in warrant
    ☐ Held, defendant found NOT to be person named in warrant and released
    ☑ Waived in open Court

☑ PRELIMINARY HEARING                    CONTINUED TO: _____
    ☑ Probable Cause found/Held to answer/bound over         ☐ Discharged from custody
    ☐ Defendant waived preliminary hearing
    ☐ RULE 5 - Held to answer in District of Prosecution
    ☐ RULE 5 - Defendant reserved right to have hearing in District of Prosecution

☑ DETENTION HEARING                    CONTINUED TO: _____
    ☐ Government withdrew motion for detention or agreed to release
    ☐ Pretrial Services Report made a part of the record    ☐ Counsel moved to retain copy of PTSR/granted
    ☐ Bond set at: _____    ☑ Defendant released on [date]: _January 25, 2021_
    ☐ RULE 5 - Defendant elected to have hearing in District of Prosecution →to be  at 10 am CST.
    ☐ Defendant waived detention hearing    ☐ Defendant reserved right to hearing in future
    ☐ Defendant detained, order to enter    ☐ ICE detainer pending
    ☐ Defendant to remain in Federal custody    ☐ Defendant to be returned to State custody
    ☐ Government moved for stay of execution of release pending appeal
        ☐ Motion granted            ☐ Motion denied
    ☐ Defendant advised of right to appeal

☐ ARRAIGNMENT ON MISDEMEANOR
    ☐ Defendant acknowledges he/she has copy of Indictment/Information
    ☐ Indictment/Information read to defendant by Judge    ☐ Defendant waives reading thereof
    PLEA: ☐ GUILTY    ☐ NOT GUILTY
    ☐ Misdemeanor - defendant consented to trial before Magistrate Judge
    ☐ Written plea agreement/filed in open Court    ☐ Oral plea agreement
    ☐ Guilty plea:    ☐ Accepted    ☐ Rejected    ☐ Taken under advisement

☐ OTHER
    ☐ Type of hearing and outcome: _____
_____

☐ DEFENDANT DID NOT APPEAR AS DIRECTED, BENCH WARRANT ISSUED

_Witness and Exhibit List attached._
NOTES/EVIDENTIARY MATTERS/SENTENCING:    (Witnesses, Exhibits, Attach W/Ex List if necessary)

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | TENNESSEE |
|---|---|---|

| UNITED STATES OF AMERICA | **EXHIBIT AND WITNESS LIST** |
|---|---|
| V. | |
| Eric Munchel | Case Number:  3:21-mj-2668 |

| PRESIDING JUDGE JEFFERY S. FRENSLEY | PLAINTIFF'S ATTORNEY Ben Schrader | DEFENDANT'S ATTORNEY Caryll Alpert and Henry Martin |
|---|---|---|
| TRIAL DATE (S) 1.22.21 | COURT REPORTER Digital Recording | COURTROOM DEPUTY Surabhi Morrissey |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| x | | 1.22.21 | | | Complaint and Affidavit or 21-mj-2668 |
| x | | 1.22.21 | 1 | 1 | FBI Special Agent Angel Defeo |
| | x | 1.22.21 | | | Peggy Miller |
| | x | 1.22.21 | | | Samantha Miller |
| | x | 1.22.21 | 1 | 1 | Peggy Miller's Third Party Custodian Declaration |
| | x | 1.22.21 | 2 | 2 | Employee reference for defendant |
| | x | 1.22.21 | 3 | 3 | Transcript of phone interview with Kristen McGregor |
| | x | 1.22.21 | 4 | 4 | Picture of Incident |
| | x | 1.22.21 | 5-8 | 5-8 | Videos of Incident |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of ___I___ Pages

AO 199A (Rev. 06/19)  Order Setting Conditions of Release                                    Page 1 of 3 Pages

# UNITED STATES DISTRICT COURT
## for the
Middle District of Tennessee

| | |
|---|---|
| United States of America | ) |
| | ) |
| v. | )     Case No. 3:21-mj-2668 |
| | ) |
| Eric Munchel | ) |
| *Defendant* | ) |

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By *Vanui Hani*
Deputy Clerk

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)    The defendant must not violate federal, state, or local law while on release.

(2)    The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(3)    The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

       The defendant must appear at: _____

                                      *Place*

_____

    on _____
                                       *Date and Time*

    If blank, defendant will be notified of next appearance.

(4)    The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 12/11)  Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(   ) (5)  The defendant is placed in the custody of:

      Person or organization _____

      Address *(only if above is an organization)* _____

      City and state _____ Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

                    Signed: _____    _____

                                    *Custodian*                   *Date*

(x  ) (6)  The defendant must:

  (x  ) (a)  submit to supervision by and report for supervision to the <u>Pretrial Services office as directed.  Must call pretrial</u> <u>services once per week.</u>

  (x  ) (b)  continue or actively seek employment.

  (  ) (c)  continue or start an education program.

  (  ) (d)  surrender any passport to:    the United States District Court Clerk

  (  ) (e)  not obtain a passport or other international travel document.

  (x  ) (f)  abide by the following restrictions on personal association, residence, or travel:    <u>only within the Middle District of Tennessee unless pre-</u> <u>approved by Pretrial Services.  Defendant may not travel outside of the continental United States without court approval.  The Defendant must</u> <u>participate in all future proceedings as directed.  Defendant may not go to Washington, D.C. unless he is appearing for court, meeting with pretrial</u> <u>services, or consulting with his attorney.</u>

  (X  ) (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including:   <u>co-defendants</u>

  (  ) (h)  get medical or psychiatric treatment: _____

  (  ) (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

  (  ) (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

  (x  ) (k)  not possess a firearm, destructive device, or other weapon.

  (x  ) (l)  not use alcohol (  ) at all (  x  ) excessively.

  (x  ) (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

  (x  ) (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer.  Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.  The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

  (x  ) (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

  (X  ) (p)  participate in one of the following location restriction programs and comply with its requirements as directed.

      (  ) (i)  **Curfew.** You are restricted to your residence every day (  ) from _____ to _____, or (  ) as directed by the pretrial services office or supervising officer; or

      (X) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or

      (  ) (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

  (x  ) (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.

      (x  ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

  (x  ) (r)  report as soon as possible within 48 hours, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

  (x  ) (s)  shall permit Pretrial Services Officer to visit you at home or elsewhere at any time, and allow Pretrial Services Officer to confiscate any contraband in plain view.

  (x  ) (t) quarantine for 14 days prior to reporting to Pretrial Services to be placed on electronic monitoring

AO 199C   (Rev. 09/08)  Advice of Penalties                                                    Page 3 of 3 Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1)   an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2)   an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3)   any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4)   a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*

## Directions to the United States Marshal

( ) The defendant is ORDERED released after processing.

(    ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release.  If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:  01/22/2021                          _____
                                                          *Judicial Officer's Signature*

                                             United States Magistrate Judge Jeffery S. Frensley
                                             _____
                                                          *Printed name and title*

DISTRIBUTION:   COURT     DEFENDANT     PRETRIAL SERVICE     U.S. ATTORNEY     U.S. MARSHAL

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By _____
Deputy Clerk

UNITED STATES OF AMERICA          )
      Plaintiff(s)                             )
                            )
v.                                               )          Case No. 3:21-mj-2668
                             )          Magistrate Judge Frensley
ERIC MUNCHEL                           )
      Defendant(s)                          )

## O R D E R

On January 22, 2021, the Defendant Eric Munchel, appeared with counsel, Caryll Alpert

and Henry Martin, and also came the Assistant U.S. Attorney, for a preliminary and detention

hearing.  The Defendant is to be released on the conditions provided in the attached order.  The

identity and contact information of the Defendant's third party custodian is to be provided only

to the United States Probation Office.  The Court's order is stayed until January 25, 2021 at 10:00

am Central Standard Time.

    IT IS SO ORDERED.

                                                    JEFFERY S. FRENSLEY
                                                United States Magistrate Judge

**United States District Court**
**Middle District of Tennessee**

Office of the Clerk
800 United States Courthouse
Nashville, Tennessee 37203
(615) 736-7178, ext 3231

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By *Vanine Hain*
Deputy Clerk

E-Mail: Vanessa_Haines@tnmd.uscourts.gov
Web Site: www.tnmd.uscourts.gov

February 2, 2021

Clerk
U.S. District Court
333 Constitution Avenue, N.W.
Washington, DC 20001

Re: TRANSMISSION OF RULE 5 DOCUMENTS

    USA v. Eric Gavelek Munchel
    Middle District of Tennessee Case No. 3:21-mj-2668

Dear Clerk:

    Enclosed please find certified copies of Rule 5 paperwork for the above-reference case.

Sincerely,

*Vanessa Haines*

Vanessa Haines
Case Administator

Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
By _Vanine Hunh_
Deputy Clerk

UNITED STATES OF AMERICA        )
                                )
                                )        No.    3:21-mj-2668
        v.                      )
                                )        Magistrate Judge Frensley
                                )
ERIC MUNCHEL                    )

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the Middle District of Tennessee, respectfully files this memorandum in support of pre-trial detention. The defendant, Eric MUNCHEL, traveled to Washington, D.C. to attend the "Stop the Steal" rally on or about January 6, 2021, where he intended to protest the outcome of the 2020 Presidential election. MUNCHEL was prepared for conflict: as he told a reporter, he was ready to "rise up" and "fight if necessary." After the rally concluded, MUNCHEL—who was dressed in tactical gear and carried a taser on his hip, and stashed other "weapons" in a tactical bag outside the Capitol—unlawfully entered the U.S. Capitol along with a mob of rioters who smashed windows and broke through doors. MUNCHEL gleefully acquired several sets of plastic handcuffs as he walked through the Capitol and entered the Senate chamber, where only moments earlier the Vice President of the United States was certifying the results of the 2020 Presidential election. In the Senate gallery, MUNCHEL stood with a crowd whose members shouted "Treason!" and lamented the disappearance of lawmakers from the chamber moments earlier. MUNCHEL's conduct here was dangerous and extremely serious. This Court should adopt the recommendation of the Pretrial Services Office and detain MUNCHEL pending trial.

RECEIVED
Mail Room
FEB 1 1 2021
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## I.      Procedural Background

On January 10, 2021, U.S. Magistrate Judge for the District of Columbia G. Michael Harvey issued a Criminal Complaint charging MUNCHEL with one count each of Knowingly Entering or Remaining in a Restricted Building or Grounds without Lawful Authority, in violation of 18 U.S.C. § 1752(a), and Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2). MUNCHEL made his initial appearance in the Middle District of Tennessee on January 11, 2021. (ECF Doc. No. 2.) At that time, the government requested that MUNCHEL be held as a danger to the community, pursuant to 18 U.S.C. § 3142(f)(1)(A), and as a serious risk of flight, pursuant to 18 U.S.C. § 3142(f)(2)(A). (*Id.*)

On January 15, 2021, U.S. Magistrate Judge for the District of Columbia Zia M. Faruqui issued a Criminal Complaint charging MUNCHEL with the offenses above, as well as two additional offenses, namely, Conspiracy, in violation of 18 U.S.C. § 371, and Civil Disorders, in violation of 18 U.S.C. § 231(a)(3). That Complaint charges the defendant's mother, Lisa Eisenhart, with the same offenses.

The government seeks MUNCHEL's continued detention pending trial in this matter on the grounds that he is a danger to the community and a serious risk of flight.

## II.     There is Probable Cause to Believe that MUNCHEL Committed the Offenses in the Complaint

"If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless" the defendant waives the hearing or is indicted. Fed. R. Crim. P. 5.1(a).[1] "At the preliminary hearing, the defendant may cross-examine adverse witnesses and may introduce evidence but may not object to evidence on the ground that it was

---

[1]     There are other circumstances in which a defendant is not entitled to a preliminary hearing, but they do not apply here. *See* Fed. R. Crim. P. 5.1(a)(3)-(5).

unlawfully acquired." Fed. R. Crim. P. 5.1(e). "If the magistrate judge finds probable cause to believe an offense has been committed and the defendant committed it, the magistrate judge must promptly require the defendant to appear for further proceedings." *Id.*

MUNCHEL is charged by complaint, as noted, with violations of 18 U.S.C. § 371, 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a), and 40 U.S.C. § 5104(e)(2). To prove a violation of 18 U.S.C. § 231(a)(3), the government must show (1) that a civil disorder existed at the time of any alleged violation; (2) that such civil disorder was resulting in interference with a federally protected function; (3) that one or more law enforcement officers were lawfully engaged in the lawful performance of their official duties incident to and during the commission of such civil disorder; (4) that the defendant attempted to commit an act for the intended purpose of obstructing, impeding, or interfering, either by himself or with someone else, in a violent manner with such law enforcement officer or officers; and (5) that such attempt to act was done willfully and knowingly. *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976).

To prove a violation of 18 U.S.C. § 1752(a), the government must show that the defendant's conduct satisfies at least one of the subsections of § 1752(a). At least three subsections—(a)(1) through (a)(3)—are implicated by MUNCHEL's conduct, although the Court need only find at the preliminary hearing that the government has satisfied one of these subsections to find that the government has established probable cause for a violation of § 1752(a). *See, e.g.*, *United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005) ("The Statute require[s] only that [the defendant] refrain from 'willfully and knowingly . . . enter[ing] or remain[ing] in any posted, cordoned off, or otherwise restricted area of . . . grounds where the President or other person protected by the Secret Service is or will be temporarily visiting.") (alterations in original). Furthermore, under 18 U.S.C. § 1752(b)(1)(A), a defendant, as here, is subject to a statutory

- 3 -

maximum penalty of ten years if he, "during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm."

To prove a violation of 40 U.S.C. § 5104(e)(2), the government must show that the defendant's conduct satisfies at least one of the subsections of § 5104(e)(2). At least five subsections—(A), (B), (C), (D), and (G)—are implicated by MUNCHEL's conduct, although the Court need only find at the preliminary hearing that the government has satisfied one of these subsections to find that the government has established probable cause for a violation of § 5104(e)(2).

Lastly, to prove a violation of 18 U.S.C. § 371, the government must show "an agreement willfully formed between two or more persons to commit an offense"—here, violations of 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a), and/or 40 U.S.C. § 5104(e)—"attended by an act of one or more of the conspirators to effect the object of the conspiracy." *United States v. Dolt*, 27 F.3d 235, 238-39 (6th Cir. 1994); *see also* Sixth Circuit Pattern Jury Instr. 3.01A ("Conspiracy to Commit an Offense—Basic Elements").

Here, the government has submitted a statement in support of the criminal complaint establishing probable cause to believe that MUNCHEL, while dressed in tactical gear and carrying a taser and plastic handcuffs, roamed the U.S. Capitol for the purpose of, at a minimum, disrupting the counting of the Electoral College vote, over which Vice President Mike Pence was presiding. The allegations underlying the complaint also establish that MUNCHEL and Eisenhart followed after two Capitol Police officers while carrying these handcuffs, and that Eisenhart appears to have shouted at the officers while leaning over a banister. At the preliminary hearing, the government anticipates calling a law enforcement witness to adopt the representations in the statement in

support of the criminal complaint and to provide additional information regarding MUNCHEL's conduct in this case. That witness will also be available for cross-examination by the defense.

Presuming that the government establishes probable cause to believe that MUNCHEL committed violations of 18 U.S.C. § 371, 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a), and 40 U.S.C. § 5104(e)(2), the government also anticipates that it will establish that detention is appropriate under 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A), for the reasons below.

## III.   LEGAL PRINCIPLES GOVERNING REQUESTS FOR DETENTION

### A.   STATUTORY BASES FOR DETENTION

There are at least three statutory bases for detention in this case. First, this Court may detain a defendant upon motion of the attorney for the Government in a case that involves a crime of violence. 18 U.S.C. § 3142(f)(1)(A). The term "crime of violence" means, among other things, "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Committing a violation of 18 U.S.C. § 1752(a) by using a dangerous or deadly weapon as outlined in § 1752(b)(1)(A) makes this case one that involves a crime of violence.

Second, the Court may detain a defendant upon motion of the attorney for the Government in a case that involves "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm or destructive device . . . or any other dangerous weapon . . . ." 18 U.S.C. § 3142(f)(1)(E). Thus, even assuming that this Court found § 1752(a) not to be a crime of violence, it is nevertheless a felony (on the facts alleged here) that involves the possession or use of a dangerous weapon, namely, a taser.

Lastly, the Court may detain a defendant upon motion of the attorney for the Government in a case that involves a serious risk that such person will flee. 18 U.S.C. § 3142(f)(2)(A).

## B.     FACTORS JUSTIFYING DETENTION

The government bears the burden of persuasion on the issue of pretrial detention. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). In determining whether the government has met its burden of persuasion, this Court must consider four factors: (1) the nature and circumstances of the offense charged, including whether, for example, the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). A judicial officer's finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b); *Stone*, 608 F.3d at 945. When "risk of flight" is the basis for detention, however, the government must only satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

For the reasons below, these factors weigh in favor of detention in this case.

## IV.   FACTUAL PROFFER OF THE EVIDENCE SUPPORTING THE CHARGE AGAINST DEFENDANT MUNCHEL[2]

### A.   The Events of January 6, 2021

On or about January 4, 2021, MUNCHEL and Eisenhart traveled from Nashville to the Grand Hyatt Hotel in Washington, D.C., to participate in the "Stop the Steal" rally scheduled for January 6, 2021. (Subpoenaed records from the Grand Hyatt Hotel in Washington, D.C. establish that Eisenhart rented a hotel room on January 4, 2021, and that she checked out of the room on January 7, 2021.) MUNCHEL and Eisenhart made no secret of their intentions in traveling to Washington: they told a reporter for The Sunday Times that they made the trip because they "wanted to show that we're willing to rise up, band together[,] and fight if necessary. Same as our forefathers, who established this country in 1776." (*See* Exh. A, The Sunday Times Article.) MUNCHEL thus perceived himself to be a revolutionary, in the mold of those who overthrew the British government in the American Revolution.

On January 6, 2021—the day of the rally—the exterior plaza of the U.S. Capitol was closed to members of the public, because a joint session of the United States Congress had convened at the United States Capitol. The Capitol is located at First Street, SE, in Washington, D.C., and is secured 24 hours a day by Capitol Police. Restrictions around the Capitol include permanent and

---

[2]      "[C]onducting a bail hearing by proffer is acceptable under the law and at the discretion of the district court." *Stone*, 608 F.3d at 949-50 (citation omitted); *see also United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("Every circuit to have considered the matter . . . [has] permitted the Government to proceed by way of proffer.") (citing cases). Here, because MUNCHEL is entitled to a preliminary hearing, the government anticipates introducing testimonial and documentary evidence in addition to the proffered evidence outlined below. The government notes further that the investigation in this case is a developing one, and that the government continues to learn new information on a near-daily basis. To the extent that the government learns any information affecting the representations in this filing in a material way, the government will apprise the Court of that information.

temporary security barriers and posts manned by Capitol Police. Only authorized people with appropriate identification are allowed access inside the Capitol.

During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Vice President Mike Pence was presiding in the Senate chamber.

Meanwhile, attendees at the "Stop the Steal" rally, including MUNCHEL and Eisenhart, began making their way to the Capitol. MUNCHEL later explained to the Times reporter that his actions in marching to and entering the Capitol were intended as a show of force: he said that their storming of the Capitol was "a kind of flexing of muscles." MUNCHEL claimed, however, that by entering the Capitol, he did not intend to "fight the police"; he said instead that "[t]he point of getting inside the building is to show them that we can, and we will."

With the joint session underway and with Vice President Mike Pence presiding, a large crowd, including MUNCHEL and Eisenhart, gathered outside the Capitol. Temporary and permanent barricades surround the exterior of the Capitol. Capitol police were present and attempting to keep the crowd away from the Capitol buildings and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the Capitol Police, and the crowd advanced to the exterior façade of the building. At such time, the joint session was still underway and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the Capitol Police attempted to maintain order and keep the crowd from entering the Capitol. Shortly after 2:00 p.m., however, individuals in the crowd forced entry into the Capitol, including by breaking windows.

- 8 -

MUNCHEL and Eisenhart were among the persons who entered the Capitol. Eisenhart claimed to the Times reporter that she and MUNCHEL entered the Capitol as "observers," and that MUNCHEL told Eisenhart not to touch anything while inside. But when MUNCHEL entered the Capitol, he was dressed for combat: he wore combat boots, military fatigues, a tactical vest, gloves, and a gaiter that covered all of his face except for his eyes. MUNCHEL had also armed himself with a taser on his hip. And MUNCHEL had mounted a red iPhone to his chest, ostensibly to record the events that day:

 

Eisenhart was dressed for combat as well, wearing a tactical vest over her flannel shirt:



In the photograph depicting MUNCHEL and Eisenhart before they entered the Capitol, neither of them was carrying plastic handcuffs, also known as "flex cuffs." But still captures of

surveillance video inside the Capitol depict both MUNCHEL and Eisenhart carrying white plastic handcuffs:



The photograph of MUNCHEL hopping a guardrail in the Senate chamber also depicts MUNCHEL carrying white plastic handcuffs. And at no point in their conversation with the Times reporter did MUNCHEL or Eisenhart mention that they both carried plastic handcuffs through the halls of Congress. Notably, MUNCHEL told the Times reporter that he had left his guns in Tennessee because of the "strict" guns laws in Washington—the implication being that MUNCHEL *would* have been armed with a firearm had Washington's gun laws not been in place. And, as described below, there is evidence that MUNCHEL and Eisenhart *were* armed with firearms when they came to Washington for the rally.

MUNCHEL and Eisenhart left Washington, D.C. for Nashville on January 7, 2021. But MUNCHEL and Eisenhart made clear in their interview with the Times that they have no intention of abandoning their goals of revolution. MUNCHEL lamented the ability of pro-Trump groups to organize, in part due to their removal from mainstream social media sites. Eisenhart agreed, explaining that "The left has everything: the media, organizations, the government. We have to

organize if we're going to fight back and be heard." Eisenhart, furthermore, made clear that she was willing to die for that cause, explaining: "This country was founded on revolution. If they're going to take every legitimate means from us, and we can't even express ourselves on the internet, we won't even be able to speak freely, what is America for? I'd rather die as a 57-year-old woman than live under oppression. I'd rather die and would rather fight."

### B.   Identification of MUNCHEL and Eisenhart

On the evening of January 8, 2021, persons using social media began identifying various clues on social media and elsewhere, which pointed to MUNCHEL as the person depicted in the Senate chamber wearing tactical gear and carrying plastic handcuffs. In the photographs above, MUNCHEL is wearing or displaying several distinctive items, including: (1) a black baseball cap depicting a rifle and a flag, with writing on the left side of the cap near the back of the cap; (2) a patch on the center of his chest displaying the "Punisher" comic book character, as well as a Tennessee "thin blue line" patch depicting the State of Tennessee bisected by a horizontal blue line; and (3) a long-sleeve shirt in a fatigues pattern with black rectangles on the upper sleeves. MUNCHEL is also depicted walking alongside Eisenhart outside the Capitol, wearing the same distinctive clothing he is depicted wearing in the Senate chamber.

MUNCHEL also maintains or maintained a Facebook page. As of approximately January 9, 2021, MUNCHEL's profile on Facebook appeared as follows:



MUNCHEL's Facebook page was taken down in the late evening hours on January 8, 2021, and is no longer accessible.

MUNCHEL is depicted in the circular Facebook photo above wearing what appears to be a white t-shirt with the words "Kid Rock" or something similar on the left breast. "Kid Rock's Big Ass Honky Tonk" is a bar located in downtown Nashville, Tennessee. On an Instagram post from August 18, 2020, MUNCHEL is depicted wearing what appears to be a white t-shirt with the words "Kid Rock" or something similar on the left breast. MUNCHEL also appears to have one or more brown wristbands on his right wrist:



Before MUNCHEL's Facebook page was taken down, various actors on social media sought to capture screen shots of MUNCHEL depicted online. Those screen shots included a

photograph of MUNCHEL in downtown Nashville draped in an American flag; wearing a baseball cap depicting a rifle and a flag; wearing one or more brown wristbands on his right wrist; and carrying an item in a wraparound holster on his right thigh:



Those screen shots also included MUNCHEL, holding an American flag and a shotgun, standing in front of a television playing a statement by President Trump; a baseball cap depicting a rifle and a flag is resting on a small desk behind him; and wearing one or more brown wristbands on his right wrist:



On or about January 6, 2021, after the riot at the Capitol, MUNCHEL was also recorded on a LiveStream video in the lobby of the Grand Hyatt. Screen captures of that video, reproduced below, depict MUNCHEL wearing a long-sleeved shirt in a fatigues pattern with black rectangle on the upper sleeves, and a dark baseball cap with writing on the left side of the cap near the back of the cap:

 

Law enforcement officers also had an encounter with MUNCHEL in the area of the Grand Hyatt Hotel. One of the officers observed a black holster on MUNCHEL's right hip, along with the black grip of what appeared to the officer at that time to be a firearm. Officers spoke with MUNCHEL, who permitted the officers to remove the item from the holster. Officers determined the item to be a black and yellow "Taser Pulse" taser, which was designed to administer an electrical shock. MUNCHEL informed the officers that he possessed the taser for his own protection as he participated in what he described as the First Amendment assemblies at the pro-Trump rally. MUNCHEL was identified at that time by his Tennessee concealed weapons permit. The home address listed for MUNCHEL in the Metropolitan Police Department's police paperwork as a result of this police contact and taser seizure, furthermore, is nearly identical to MUNCHEL's actual address in Nashville.

    **C.**    <u>**Search Warrant Execution and Additional Investigation**</u>

       Based in part upon the information above, the government obtained a federal search warrant for MUNCHEL's residence in Nashville on January 9, 2021. Federal agents began visual surveillance of the residence that same day. At approximately 6:00 p.m., a federal agent observed a person the agent believed to be MUNCHEL arrive in a red Kia Sentra registered to Eisenhart and enter the residence. At approximately 6:00 a.m. on January 10, 2021, FBI agents with the Joint Terrorism Task Force executed the search warrant at the residence. MUNCHEL was not present.

As it turned out, the person whom agents had observed arrive the night before was not MUNCHEL but a relative of MUNCHEL's ("W-1").

During an interview with W-1 that followed, W-1 informed agents that W-1 and MUNCHEL lived at the residence. W-1 informed agents further that MUNCHEL and Eisenhart traveled to Washington, D.C. on or about January 6, 2021, to attend the pro-Trump rally scheduled on that date. W-1 informed agents that W-1 did not travel to Washington, D.C. with MUNCHEL and Eisenhart, and instead remained in Nashville.

W-1 informed agents that MUNCHEL and Eisenhart returned from Washington, D.C. to the residence on January 7, 2021. W-1 informed agents that Eisenhart left the residence on January 8, 2021. W-1 informed agents further that MUNCHEL left the residence on the morning of January 9, 2021, and informed W-1 that he was going to work. Some time later that day, MUNCHEL's manager called W-1, inquiring about MUNCHEL's whereabouts, as MUNCHEL had not come into work that day. W-1 later spoke with MUNCHEL by telephone; MUNCHEL told W-1 that he was "OK," but did not offer additional details about where he was located or whether he was with anyone.

Inside the residence, agents located the items MUNCHEL was depicted wearing in the photograph above in the Senate chamber, including the tactical vest with a patch on the center of the chest displaying the "Punisher" comic book character and the Tennessee "thin blue line" patch depicting the State of Tennessee bisected by a horizontal blue line; a baseball cap depicting a rifle and a flag, with writing on the left side of the cap near the back of the cap; and five pairs of white plastic handcuffs:

  

Agents recovered a second tactical vest as well, which appears similar, if not identical, to the vest Eisenhart appeared to be wearing at the Capitol. W-1 informed agents that all of these items belonged to MUNCHEL. W-1 informed agents that a bedroom inside the residence was MUNCHEL's bedroom. Agents located a black Stack-On safe, standing approximately 5 feet tall, inside that bedroom. Inside a closet in the bedroom, agents also located a .22 caliber revolver. Agents also located dozens of rounds of ammunition inside the bedroom, along with multiple empty and full magazines.

Based on the information above, the government obtained a federal search warrant to search the premises, as well as the black Stack-On safe located inside the premises, for (among other things) firearms, firearms, parts and ammunition. During a search of the black Stack-On safe, agents located approximately 15 firearms, including assault rifles, a sniper rifle with a tripod, other rifles, shotguns, and pistols, and hundreds of rounds of ammunition. Agents also located a drum-style magazine elsewhere in the residence. A photograph of these items is below:



Agents did not recover any cell phones during their search of the residence. But agents learned that MUNCHEL had provided a red iPhone to a friend, W-2, for "safekeeping." W-2 also reported that MUNCHEL told W-2 that the photograph that had been circulating of a male wearing tactical gear and jumping over a railing in the U.S. Senate chamber was MUNCHEL. Agents later seized that red iPhone as evidence.

### D.   The Videotape

Law enforcement recovered a video that MUNCHEL took on his iPhone on January 6, 2021. That video—captured using the cell phone MUNCHEL mounted to his chest—depicts MUNCHEL standing with Eisenhart in a large crowd outside the Capitol. As MUNCHEL and Eisenhart make their way to the Capitol, they encounter several members of the "Oathkeepers," a militia group that is distrustful of government authority. One of the Oathkeepers says, "There's 65 more of us coming." MUNCHEL, when he recognizes them, says in affirmation, "Oathkeepers," and bumps fists with one of the men.

It is clear at that point in the video that persons are entering, or attempting to enter, the Capitol. At that time, Eisenhart says, "We're going straight to federal prison if we go in there with weapons." MUNCHEL says words to the effect of, "Yeah, that's why I'm not going in there." Eisenhart replies, "Let's go put it—we can put 'em in the backpacks." MUNCHEL and Eisenhart then walk towards a low stone wall, where MUNCHEL sets up plastic chairs and encourages protestors to climb over the wall towards the Capitol and helps them do so. Eisenhart likewise encourages protesters to enter the Capitol, exhorting them, "Yeah, go up in there. You can go up in there now." Moments later, MUNCHEL says he needs to "take my weapons off before I go in there." MUNCHEL and Eisenhart retreat through the crowd, to a location where a tactical bag and other items appear to have been stashed. At that location, MUNCHEL and Eisenhart take items off of their person and deposit those items in or near the bag. Eisenhart can then be heard to say, "We're going in," "the [tear] gas isn't bad," and "Let's go in, let's go in."

As MUNCHEL and Eisenhart get closer to the Capitol, an unknown woman can be heard to make a reference to "treason." MUNCHEL replies, "Hell yeah it is." As they push through the crowd, Eisenhart engages with a rioter who tells her that he was "maced," and that he "punched two of them in the face," to which Eisenhart replies, "Good." Eisenhart says further, "While everyone else is on their couch, you guys are training, and getting ready for it." Eisenhart also tells MUNCHEL that someone in the crowd was saying that the events at the Capitol were "on the news"; MUNCHEL replies in part, "Oh yeah." MUNCHEL says further, "They're gonna use this against us as hard as they can." Eisenhart replies, "I don't care, that's fine, I don't care." MUNCHEL asserts, "We ain't playing fucking nice no god damn more." Eisenhart replies, "That's right." Moments later, a person in the crowd tells MUNCHEL and Eisenhart, "You guys look like y'all ready to go." MUNCHEL replies, "Fucking ready to fuck shit up."

As MUNCHEL and Eisenhart approach the Capitol, a man can be heard shouting, "Congress is shut down! Tear gas packages thrown in the Congress!" Eisenhart exclaims, "They got tear-gassed, motherfuckers! Oh my God. That is [unintelligible] my best day, to know that they got tear-gassed." Other people in the crowd can be heard screaming, "Fuck that, this is our house!" As MUNCHEL and Eisenhart crawl through a broken metal guardrail outside the Capitol, MUNCHEL can also be heard saying, "Hell yeah, baby!"

As MUNCHEL and Eisenhart approach the exterior of the Capitol, Eisenhart remarks, "The story of how we got in is going to be great—who got us in the house." MUNCHEL replies, "Probably the last time I'll be able to enter the building with armor and . . . fucking weapons." It is then possible to hear the sounds of shattering glass and breaking windows, at which time MUNCHEL shouts, "I guess they thought we were playing!" MUNCHEL and Eisenhart then enter the Capitol amidst a throng of protestors and make their way to the upstairs level. They encounter a man shouting, "Treason!" into a bullhorn, and Eisenhart joins the chant. MUNCHEL informs various rioters, "Don't break shit," and "No vandalizing shit," and "We ain't no god damn Antifa, motherfuckers."

At one point, MUNCHEL spots plastic handcuffs on a table inside a hallway in the Capitol. MUNCHEL exclaims, "Zipties. I need to get me some of them motherfuckers," and grabs several white plastic handcuffs from on top of a cabinet (but leaves many others). MUNCHEL then follows after Eisenhart, who is carrying a handcuff as well, to a staircase near the entrance to the Senate gallery; it appears from Capitol surveillance video that Eisenhart is following after two Capitol Police officers who had just encountered a mob outside the entrance to the Senate gallery. Eisenhart shouts from the banister, "Freedom!" "Traitors!" "We want a fair election!" and "We want rule of law!" MUNCHEL and Eisenhart then enter the Senate gallery; chillingly, persons in

the crowd can be heard shouting, "Anybody home?" "They went into the tunnels," "Where'd you go?" "They're cowards!" "Are you afraid?" and "Treason!" Eisenhart is depicted shouting "Treason!" as well. Just before MUNCHEL and Eisenhart leave the gallery, MUNCHEL shouts, "I want that fucking gavel!" Lastly, as MUNCHEL and Eisenhart are attempting to leave, Eisenhart says words to the effect of, "Don't carry the zip ties, just get 'em out of their hand, out of [unintelligible] get 'em out of our hands."

## V.    THIS COURT SHOULD DETAIN DEFENDANT MUNCHEL AS A DANGER TO THE COMMUNITY AND AS A SERIOUS FLIGHT RISK

The government has met its burden of showing that there is clear and convincing evidence that MUNCHEL should be detained pending trial to ensure the safety of the community. The government has also met its burden of showing by a preponderance of the evidence that MUNCHEL poses a serious risk of flight.

### A.    Defendant MUNCHEL is Charged with a Serious Offense

The nature and circumstances of the offense charged in this case militate strongly in favor of detention. MUNCHEL has been charged with an extremely serious offense, arising from his entry into the Capitol with a violent mob while dressed in tactical gear and armed with a taser, to disrupt the counting of the Electoral College votes from the 2020 Presidential election. MUNCHEL also seized several pairs of white plastic handcuffs and carried them around with him while inside the Capitol; he appears to have brought them back to Nashville with him, perhaps as trophies. MUNCHEL also made statements evincing an intent to engage in violent conduct because of his disillusionment with the outcome of the 2020 Presidential election. And the uprising MUNCHEL engaged in has also resulted in at least five deaths, including of a Capitol police officer who died after engaging in a physical confrontation with members of the mob.

In considering the nature and circumstances of the offense, the Court should also weigh the possible penalty MUNCHEL faces upon conviction. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, MUNCHEL faces a statutory maximum term of imprisonment of 20 years, if convicted of the charges in the complaint. This time period represents a substantial penalty, which would serve as powerful motivation for MUNCHEL to flee the jurisdiction were he to be released. This factor thus weighs in favor of detention.

### B.    The Evidence of MUNCHEL's Dangerousness is Strong[3]

The weight of the evidence of MUNCHEL's dangerousness is strong. As set forth more fully in Section V.C below, MUNCHEL has a history of contacts with law enforcement. MUNCHEL's conduct underlying the instant offense—which includes MUNCHEL stashing unknown "weapons" before entering the Capitol, carrying a taser on his person into the Senate gallery, and seizing handcuffs as he and others stormed the building—also demonstrates the danger he poses to the community if released. This factor thus weighs in favor of detention as well.

### C.    History and Characteristics of the Defendant

MUNCHEL has had several prior contacts with law enforcement. According to the Pretrial Services Report, MUNCHEL was arrested for possession of less than one ounce of marijuana in Fulton County, Georgia, on November 24, 2011. That case was dismissed on June 30, 2014. MUNCHEL was again arrested for possession of less than one ounce of marijuana, in Dunwoody, Georgia, on March 24, 2013. MUNCHEL was convicted on April 29, 2014, and sentenced to 12 months' probation. MUNCHEL was arrested for battery in Fulton County on May 30, 2013. That case was dismissed on August 5, 2015. Lastly, MUNCHEL was arrested for possession of less than one ounce of marijuana in Dunwoody on March 27, 2014. He failed to appear on March 31,

---

[3]    "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citation omitted).

2014, although it appears that he was not prosecuted for that violation. He pled guilty to the possession offense on April 29, 2014, and was sentenced to 12 months' probation.[4] MUNCHEL thus has a history, although it is not extensive, of contacts with law enforcement, including multiple convictions for misdemeanor drug offenses and at least one instance of failing to appear for a court proceeding. This factor thus weighs in favor of detention as well.

### D.     **MUNCHEL Poses a Danger to the Community if Released**

For reasons already cited related to the charged conduct, MUNCHEL poses a serious danger to the community. His release in this case would therefore compromise the safety of the general public. This factor thus weighs in favor of detention as well.

### E.     **Risk of Flight**

As noted, MUNCHEL faces a significant statutory maximum penalty if he is convicted of the charges in the complaint. MUNCHEL also has a record of failing to appear on at least one prior occasion in a state-court matter. Furthermore, MUNCHEL took steps in this case to evade detection by law enforcement. When it became clear he was a suspect in this case, he deactivated his Facebook account; gave his cell phone to an associate; and left his residence and failed to show up for his job without telling W-1 where he was going. MUNCHEL only turned himself in to law enforcement when it became clear that the FBI had searched his residence and had an arrest warrant for him—in other words, when his apprehension was all but inevitable. For these reasons, this Court should find by a preponderance of the evidence that MUNCHEL poses a serious risk of flight, and detain him on that basis.

---

[4]     The representations in this section are based upon the government's review of the Pretrial Services Report, the National Crime Information Center record for the defendant, Tennessee law enforcement databases, and other criminal history materials for the defendant. The government has not yet obtained certified copies of all of the defendant's prior convictions.

## VI.    **CONCLUSION**

For the foregoing reasons, as well as any reasons which may be set forth at a hearing on this motion, the government respectfully submits that there exists no condition or combination of conditions which would assure the safety of any person or the community, or which would ensure the defendant's appearance at his court hearings. Accordingly, the government requests that the Court order the defendant detained pending trial.

In the event that the Court elects to release MUNCHEL pending trial, the government makes two requests. First, the government requests that the Court include in its release order that the defendant (1) be ordered to wear a GPS tracking device; (2) stay away from Washington, D.C., unless he is appearing for court, meeting with pretrial services, or consulting with his attorney; (3) call pretrial services once per week; (4) advise pretrial services of any travel he intends to undertake within the United States outside of the Middle District of Tennessee; (5) not travel outside of the continental United States without court approval; and (6) participate in all future proceedings as directed. Second, the government requests that the Court stay any release order so that the government may file a motion for revocation of the release order with the court having original jurisdiction over the offenses, namely, the United States District Court for the District of Columbia, pursuant to 18 U.S.C. § 3145(a).

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney

By:      /s/ Ben Schrader
BEN SCHRADER
Assistant United States Attorney
110 9th Avenue South, Suite A-961
Nashville, Tennessee 37203
(615) 401-6615

- 23 -

Dated:          January 20, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2021, I sent a copy of the foregoing via the Court's electronic filing system to Caryll Alpert, Esq., counsel for the defendant.

_s/ Ben Schrader_
BEN SCHRADER
Assistant United States Attorney

CRISIS AMERICA

# Trump's militias say they are armed and ready to defend their freedoms

Further violence, and even civil war, is threatened in the final days of the presidency

Laura Pullman, Washington

Sunday January 10 2021,
12.01am GMT,
The Sunday Times

Global politics

US politics

Joe Biden



Wednesday's storming of the Capitol was a 'warning shot', said one participant
SAUL LOEB

Share  ✉  🐦  f  🔗                                    Save  ☆

The storming of the Capitol by a ragtag bunch of white nationalists, self-styled militia men and die-hard Donald Trump supporters was a tremor before a bigger earthquake, claimed geed-up protestors in the wake of the rampage.

"This demonstration was a warning shot from we the people," said Jay Perez, who had travelled from New York City for the "stop the steal" march in Washington last Wednesday.

"It shows that people are awakening, they're ready to defend America no matter what the deep state of this country or the world order puppets want. This is World War Three."

Last Thursday morning, as metal fencing was hastily erected around the Capitol and pressured police hunted the perpetrators, conspiracy theorists and fired-up right-wing fanatics from across the country discussed their "last chance to save America" in the shadow of the Washington Monument. Many pledged to return for another pro-Trump march scheduled to coincide with Joe Biden's inauguration on January 20, which Trump himself has now vowed to avoid.

"We wanted to show that we're willing to rise up, band together and fight if necessary. Same as our forefathers, who established this country in 1776," said

Eric Munchel, who had driven from Nashville, Tennessee, with his mother,
Lisa Eisenhart.

Sponsored Content by Dianomi

The pair were among the crowd who flooded the Capitol the previous
afternoon but claimed that they left as soon as demonstrators talked about
stealing laptops and government papers. Eisenhart stressed to me that they had
gone into the building as "observers" – both wore bulletproof vests — and that
her son had told her not to touch anything.

However, Twitter sleuths quickly worked to determine that it was Munchel
who was caught on camera leaping over railings in the senate chamber in full
paramilitary gear – in a photograph that quickly went viral.

During our conversation, as they packed their car the following day to go
home, Munchel claimed that he had left his guns behind in Tennessee due to
strict gun laws in Washington but, unsurprisingly, didn't mention that he had
been clutching a handful of plastic zip ties while storming the Capitol. These
are the restraints typically used by police to detain individuals, and it's unclear
what Munchel's intention was with them. The photograph led to speculation
that the rioters were potentially planning to take hostages. The riot left five
people, including a police officer, dead.

"It was a kind of flexing of muscles," said Munchel, who wore a bulletproof
vest and complained that police confiscated his Taser during the riot. "The
intentions of going in were not to fight the police. The point of getting inside
the building is to show them that we can, and we will."

Preparing for their 10-hour drive home, the 30-year-old clamoured for greater
organisation in the next steps to fight against Biden's America. He worried that
many pro-Trump warriors were individualists and lamented that potential
leaders in the Make America Great Again (Maga) movement faced difficulty in
rallying troops due to banishment from mainstream social media sites. "Our
biggest struggle is getting together, knowing where to go, what to do and who
to go to," said Munchel despondently.

His mother agreed: "The left has everything: the media, organisations, the
government. We have to organise if we're going to fight back and be heard."
Eisenhart, a nurse, added that a violent revolution has long been on the cards
thanks to last year's racial justice protests, anti-police riots and "unnecessary"
coronavirus lockdowns.

"This country was founded on revolution. If they're going to take every
legitimate means from us, and we can't even express ourselves on the internet,
we won't even be able to speak freely, what is America for?" said a teary-eyed
Eisenhart, biting into a hotdog. "I'd rather die as a 57-year-old woman than
live under oppression. I'd rather die and would rather fight."

Political commentators fear that the riot, as well as Republicans distancing themselves from Trump, will have emboldened the Maga movement into further action. Activists have begun promoting an armed march on Capitol Hill and "all state capitols" on January 17.



Activists have begun promoting an armed march on Capitol Hill on January 17
STEPHANIE KEITH

"Over two hundred years ago, our founding fathers fought for the rights and liberties of this nation. Don't let their efforts be in vain. Demand freedom. End the corruption," reads the poster. The small print suggests attendees "come armed at your personal discretion".

Meanwhile, other Trump loyalists last week were claiming, without evidence, that left-wing antifa (anti-fascist) hooligans had purposefully disguised themselves in Trump merchandise before violently overrunning the Capitol.

"Antifa stormed the Capitol to make us look bad and it just pisses me off," said Londa Gatt, a member of Bikers for Trump who had travelled from Michigan and was puzzlingly optimistic that Biden, 78, would not be taking power later this month.

"The hopes, and what I feel in my heart, is that the military is going to arrest these all traitors that committed treason and that Trump is going to take office," she said. "I'm not even one bit concerned."

By Thursday evening, facing international criticism and suffering mounting resignations, Trump finally condemned the attack on the "seat of American democracy" in a video posted on Twitter. For critics, it was a hollow "hostage" video that he was forced to make in a bid to avoid a second impeachment. For some staunch supporters, however, it was a staggering betrayal.

"Wow, what an absolute punch in the gut," read one post on TheDonald, a forum where the president's devotees have plotted how to keep their man in power. "He says it's going to be wild, and when it gets wild, he calls it a heinous attack and middle-fingers his supporters that he told to be there. Unbelievable."

"People were willing to die for this man and he just threw them all under the bus. That's the only thing that's shameful about the events of the past 36 hours," Nicholas Fuentes, a far-right commentator, wrote to his 133,347 followers on Twitter. "I'm sure the usual suspects suggested that this was a good idea, I hope Trump reverses course, for our sake."

More troubling is the fervent Maga fanbase plotting to return to Washington for Biden's swearing-in. In dark corners of the web, militants are promoting the "Million Militia March".



One Capitol invader carried plastic zip ties, suggesting a plan to take hostages

Many loitering outside the Capitol last week viewed this as an exciting prospect. "Either they give up the fraudulent election they had or America mobilises," said Travis Wright, who drove 24 hours from Denver, Colorado, to protest last week. "I'll be here for [the inauguration] one way or the other, whether it's to see my president, 45th president Donald J Trump, take that stand, or whether it's to stand against the fake Joe Biden."

Wright, who sells knives and axes for a living, talked about burning America down "to build it back better", and predicted further violence. "You'll finally see the Trump supporters truly take a stand and take it to the streets. People want to sit there and call riots therapeutic for Black Lives Matter and antifa. We'll start calling it therapeutic for us because it'll be us getting our anger out at that point."

Some Trump supporters expressed fear about the prospect of a "civil war where you're shooting your brothers, your family", while others just seemed excited at the idea of more violent uprisings.

"January 20 should be interesting. Let's see what happens, but it will be more history, I guess," said a man with a tattoo of a knuckle duster and a symbol of 3%, which relates to a militia group named after the disputed claim that only 3% of American colonists took up arms against Great Britain in the American War of Independence.

As the final countdown to a new presidency begins, investigators scrambled to track down the Capitol raiders, many of whom quickly escaped Washington on Thursday. Prominent among them was Jake Angeli, an Arizonian who calls

himself Yellowstone Wolf and champions QAnon, a conspiracy theory that a paedophile cult runs a deep-state plot. Extraordinary photographs of Angeli, bare-chested, heavily tattooed and wearing a fur hat with buffalo horns as he broke into the Capitol, quickly spread across the world.

"The fact that we had a bunch of our traitors in office hunker down, put on their gas masks and retreat into their underground bunker, I consider that a win," Angeli, 32, told NBC News as he fled Washington by car on Thursday.

The police are also seeking Jon Schaffer, a guitarist with Iced Earth, a successful rock band, who was photographed inside the government building. Others were pictured carrying the Confederate flag and wearing clothing with horrifying antisemitic messages.

As darkness fell over the Capitol on Thursday, one young self-described "patriot" painted a dismal picture of Biden's America: "In a year, we're not going to be able to buy our own bread, we won't be able to afford gas for our cars. Our country is going in the hole real fast."



Investigators are now scrambling to track down the Capitol invaders
JIM LO SCALZO

He hoped for a "true insurgent" to "take out" Biden. "I don't believe he's our president. He's not my president and he definitely won fraudulently," he said, standing beside a stall selling "Stop the steal" baseball caps.

For Bobby, a property developer who travelled from Indiana with his wife and six children for the pro-Trump march, the seizing of the Capitol was the beginning of an uprising. "It's going to take a shaking to wake up people, you know; yesterday at the Capitol, that there was a small tremor," he said. "If we were to go into a war situation, I could protect my children more in that aspect than I can from letting their beliefs be threatened by our school systems and by our government."

He added that he was willing to die to "protect his freedoms — if you don't have that mentality that you're willing to give up your life for what you believe in, then get the hell out of here", he said.

Extremism experts have cautioned about a rise in violent clashes in Washington between Trump loyalists and right-wing groups, such as the Proud Boys, and left-wing agitators.

"In the case of the Million Militia March these groups, who have agendas to create disruption, will piggyback and try to create a big tent to bring in as many protesters as possible, and they tend not to be terribly picky about who joins the party. Clearly, that's a concern," said Jonathan Vick, the North American representative from the International Network Against Cyber Hate, which campaigns against extremism online.

Last week's fatal riot will likely add momentum for further attacks, warned Vick: "We're already seeing that the people who, unfortunately, were killed are now being cast as martyrs, and so that is absolutely fuel for additional violence and additional actions by people looking for an excuse."

Other Trump '"patriots" were underwhelmed by the president's speech last Wednesday and vowed not to return to Washington to fight his corner again.

"It wasn't anything groundbreaking like he was promising," said a young woman waiting for her train home to New Jersey. "I'd hoped he'd walk us through the next steps more, but he just went over the fraud again and we already knew all that."

| Global politics | US politics | Joe Biden |

## Related articles



**Capitol invaders were bitter, dangerous — and pitifully lost**

The crowd pulsed with a blend of fury and anticipation. From above the protesters, on the scaffolding erected for the inauguration, a single...

January 10 2021, 12.01am GMT

Robert Moore

**Rag-tag activist army fired by righteousness**

If clues were needed, the clues were there — writ large, in open public forums, for all to see. An abundance of...

January 08 2021, 12.00pm GMT

Jacqui Goddard, Miami

**Capitol rioters say 'sorry' as FBI starts to round them up**

It had seemed a good idea at the time: storm the US Capitol, swing from the Senate balcony, sit in the vice-president's chair and yell with a...

January 09 2021, 12.00pm GMT

Jacqui Goddard, Miami

**Comments (511)**

Comments are subject to our community guidelines, which can be viewed here.

John Schrader ▾

Newest ▾

J   Add to the conversation...

# U.S. District Court
## Middle District of Tennessee (Nashville)
### CRIMINAL DOCKET FOR CASE #: 3:21-mj-02668 All Defendants

Case title: USA v. Munchel

Assigned to: Magistrate Judge Jeffery S. Frensley

Date Filed: 01/10/2021

ATTEST AND CERTIFY
A TRUE COPY
CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

By *Janine Hane*
Deputy Clerk

**Defendant (1)**

**Eric Gavelek Munchel**
*Rule 5 Transfer to the District of Columbia*

represented by **Caryll S. Alpert**
Federal Public Defender's Office (MDTN)
810 Broadway
Suite 200
Nashville, TN 37203
(615) 736-5047
Email: caryll_alpert@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Opening)** | |
| --- | --- |
| None | |

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Terminated)** | |
| --- | --- |
| None | |



| **Complaints** | **Disposition** |
| --- | --- |
| 18:1752 (a) and 40: 5104(e)(2) | |

---

**Plaintiff**

**USA**

represented by **John Benjamin Schrader**
U.S. Attorney's Office (Nashville Office)
Middle District of Tennessee
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
(615) 401-6615
Email: ben.schrader@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/10/2021 | 1 | Warrant Issued on 1/10/2021 in District of Columbia Returned Executed in this District on 1/10/2021 as to Eric Gavelek Munchel. (vh) (Entered: 01/15/2021) |
| 01/10/2021 | | Arrest (Rule 5) of Eric Gavelek Munchel. (vh) (Entered: 01/15/2021) |
| 01/11/2021 | 2 | Minute Entry for proceedings held before Magistrate Judge Jeffery S. Frensley: Initial Appearance in Rule 5(c)(3) Proceedings as to Eric Gavelek Munchel held on 1/11/2021. Defendant appeared with appointed counsel Caryll Alpert. Government filed a motion for detention. Preliminary and Detention hearing continued to 1/19/2021 at 9:30 AM. (vh) (Entered: 01/15/2021) |
| 01/11/2021 | 3 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Eric Gavelek Munchel. Signed by Magistrate Judge Jeffery S. Frensley on 1/11/2021. (vh) (Entered: 01/15/2021) |
| 01/11/2021 | 4 | NOTICE OF HEARING as to Eric Gavelek Munchel: Preliminary and Detention Hearing by video set for 1/19/2021 at 9:30 AM before Magistrate Judge Jeffery S. Frensley. (vh) (Entered: 01/15/2021) |
| 01/11/2021 | 5 | ORDER as to Eric Gavelek Munchel: Pursuant to Rule 5(f) of the Federal Rules of Criminal Procedure, as amended by Due Process Protections Act, the Court confirms the United States' obligation to produce information and material that is exculpatory within the meaning of Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, and orders it to do so reasonably promptly upon discovery, as required by Local Rule 16.01(a)(3). Failure to produce exculpatory evidence and material in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or other sanctions by the Court. Signed by Magistrate Judge Jeffery S. Frensley on 1/11/2021. (vh) (Entered: 01/15/2021) |
| 01/15/2021 | 6 | MOTION to Continue *January 19 Hearings* by Eric Gavelek Munchel. (Alpert, Caryll) (Entered: 01/15/2021) |
| 01/15/2021 | 7 | ORDER as to Eric Gavelek Munchel: Motion to Continue Hearings 6 is GRANTED. Preliminary and Detention Hearings by video rescheduled for 1/22/2021 at 1:00 PM before Magistrate Judge Jeffery S. Frensley. Signed by Magistrate Judge Jeffery S. Frensley on 1/15/2021. (vh) (Entered: 01/15/2021) |
| 01/20/2021 | 8 | NOTICE *of Filing (Government's Memorandum in Support of Pre-Trial Detention)* by USA as to Eric Gavelek Munchel (Attachments: # 1 Exhibit A (Sunday Times Article))(Schrader, John) (Entered: 01/20/2021) |
| 01/22/2021 | 9 | Minute Entry for proceedings held before Magistrate Judge Jeffery S. Frensley: Preliminary and Detention Hearing as to Eric Gavelek Munchel held on 1/22/2021. Rule 5 Identity hearing waived in open court. Defendant to be released on 1/25/2021 at 10:00 am. Attachment : # 1 Sealed Exhibit and Witness) (vh). (Entered: 01/25/2021) |
| 01/22/2021 | 10 | ORDER as to Eric Gavelek Munchel: On January 22, 2021, the Defendant Eric Munchel, appeared with counsel, Caryll Alpert and Henry Martin, and also came the Assistant U.S. Attorney, for a preliminary and detention hearing. The Defendant is to be released on the conditions provided in the attached order. The identity and contact information of the Defendant's third party custodian is to be provided only to the United States Probation Office. The Court's order is stayed until January 25, 2021 at 10:00 am Central Standard Time. Signed by Magistrate Judge Jeffery S. Frensley on 1/22/2021. (vh) (Entered: 01/25/2021) |
| 01/22/2021 | 11 | ORDER Setting Conditions of Release as to Eric Munchel. Signed by Magistrate Judge Jeffery S. Frensley on 1/22/2021. (vh) (Entered: 01/25/2021) |

| 01/27/2021 | 12 | Transcript filed as to Eric Gavelek Munchel for date of January 22, 2021, before Judge Jeffery Frensley. Court Reporter/Transcriber: Roxann Harkins, 615-403-8314, roxann_harkins@tnmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. IT IS THE RESPONSIBILITY OF COUNSEL TO REVIEW THE TRANSCRIPT AND REQUEST REDACTION OF CONTENT CLASSIFIED AS PRIVATE UNDER THE NOTICE TO MEMBERS OF THE BAR, ELECTRONIC AVAILABILITY OF TRANSCRIPTS OF COURT PROCEEDINGS, EFFECTIVE MAY 5, 2008, AVAILABLE ON THE COURT'S WEBSITE UNDER THE CM-ECF CASE INFO LINK, GENERAL INFORMATION, ELECTRONIC TRANSCRIPTS NOTICE. Intent to Request Transcript Redaction due 2/3/2021. Redaction Request due 2/17/2021. Redacted Transcript Deadline set for 3/1/2021. Release of Transcript Restriction set for 4/27/2021. (RH) (Entered: 01/27/2021) |
| --- | --- | --- |
| 01/29/2021 | 13 | NOTICE of Intent to Request Transcript Redaction of 12 Transcript,,, by Caryll S. Alpert in case as to Eric Gavelek Munchel. (Alpert, Caryll) (Entered: 01/29/2021) |
| 01/29/2021 | 14 | Transcript Redaction Request in case as to Eric Gavelek Munchel re 12 Transcript,,, filed by attorney Caryll S. Alpert (Alpert, Caryll) (Entered: 01/29/2021) |
| 02/01/2021 | 15 | Redacted Transcript filed as to Eric Gavelek Munchel for date of January 22, 2021, before Judge Jeffery Frensley re 12 Transcript. Court Reporter/Transcriber: Roxann Harkins, 615-403-8314, roxann_harkins@tnmd.uscourts.gov. (RH) (Entered: 02/01/2021) |
| 02/02/2021 | 16 | Rule 5(c)(3) Documents Transmitted to the District of Columbia as to Eric Gavelek Munchel. (vh) (Entered: 02/02/2021) |