UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 1:21-cr-118 (RCL) |
| ) | |
| LISA MARIE EISENHART ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF**
**MOTION FOR MODIFICATION OF BOND**

NOW COMES Defendant Lisa Marie Eisenhart, by and through undersigned appointed counsel, and replies to the Government's Opposition to her Motion for Modification of Bond.

As noted in Ms. Eisenhart's Motion, her U.S. Pretrial Officer supports a request that her current bond conditions requiring a curfew and location monitoring be removed. The Government, however, has decided to oppose the U.S. Pretrial Office's recommendation and fight these changes, citing as support only generalities concerning Ms. Eisenhart's danger risks. That position ignores the D.C. Circuit's guidance in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021) and does not justify keeping the current restrictions on Ms. Eisenhart's liberty.

As noted therein, "In our society liberty is the norm." *Id.* at 1279 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). And when the basis for restrictions on liberty is based on dangerousness, the Government must prove the need for those restrictions not by a mere preponderance, but based on "clear and convincing" evidence. As our Circuit clarified, limiting this presumption of liberty "accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, *prospective* threat to public safety." *Id.* at 1280 (emphasis added). *See id.* (*Salerno*'s rule was that "[w]hen the Government proves by clear and convincing evidence that

1

an arrestee *presents an identified and articulable threat* to an individual or the community … a court may disable the arrestee *from executing that threat.*") (emphasis in original).

Rather than looking forward and identifying any "prospective" threat as the Circuit explained was necessary, the Government's Opposition looks only backward. Other than paying lip service to the concept of prospective risk, *see* ECF #85, at 3 ("Although January 6 has passed, the threat of violence has not"), the Government fails to identify or articulate a single risk ahead. It once again just references Ms. Eisenhart's activities on January 6 and shortly thereafter during a press interview, but all of that was well known to the D.C. Circuit. It nevertheless concluded:

> Because Munchel and Eisenhart did not vandalize any property or commit violence, the presence of the group was critical to their ability to obstruct the vote and ot cause danger to the community. Without it, Munchel and Eisenhart – two individuals who did not engage in any violence and who were not involved in planning or coordinating the activities – seemingly would have posed little threat. The District Court found that appellants were a danger to "act against Congress" in the future, but there was no explanation of how the appellants would be capable of doing so now that the specific circumstances of January 6 have passed.

*Id.* at 1284.

The Government's latest Opposition Brief also contains no such explanation. There is not a single thing the Government now argues that was not fully known by the D.C. Circuit.[1]

Since then, the equities have moved in Ms. Eisenhart's favor, and significantly. There is no suggestion here – nor could there be – that she has done anything wrong since her release. Previous suggestions that she might not comply with release conditions proved unfounded. The reality instead is that Ms. Eisenhart proved herself to be a model defendant on bond. And that is

---

[1] The Government's Opposition quotes from this Court's decision that "[a]s a self-avowed, would-be martyr, she poses a clear danger to our republic," ECF #85 (quoting ECF #24, at 16), wholly ignoring the Circuit's contrary (and *controlling*) precedent that those like Ms. Eisenhart who merely "cheered on the violence or entered the Capitol after others cleared the way" are in a "different category of dangerousness" than those who assaulted officers, broke through windows, doors and barricades, or planned and coordinated such actions. *Id.* at 1284. *See also id.* at 1288 (Katsas, J., concurring) (despite Eisenhart's avowal to fight, "the record shows otherwise").

why the U.S. Pretrial Office itself is recommending that these conditions be removed, as an unnecessary and ongoing cost that the U.S. Pretrial Office should not have to continue to bear.

Finally, the Government claims that "[t]he Defendant proffers no support for her motion to remove this condition of relief [sic] aside from the recommendation of the Pretrial Service Officer and because removal of monitoring would better allow for exercise and the routine activities of daily life." ECF #85, at 4.  But it is the Government's burden to justify pretrial restraints on liberty, not an accused's burden to justify freedoms.  *See United States v. Brock*, 2021 U.S. Dist. LEXIS 153394, at *5 (D.D.C. 2021) (Exhibit A) ("The Bail Reform Act requires that a defendant on pretrial release be 'subject to the least restrictive' set of conditions that will reasonably assure his appearance and the safety of the community").  The Government concedes here that "Eisenhart's history and characteristics do not support these restrictions because she has no criminal history or history of violence aside from these charges." ECF #85, at 4.  And as noted, its backward-looking facts relating to the events of this case fail to change that equation.

The Government's Opposition fails to cite a single case in support of its position.  That omission seems particularly surprising in light of Judge Bates' recent opinion in *Brock*, *supra*, issued just last week, involving almost identical facts.[2]  There, as here, the issues involved the need for location monitoring and a Government request for a curfew.  The January 6 and other allegations against Larry Brock were, if anything, more severe than those against Ms. Eisenhart, yet Judge Bates rejected the Government's positions.  *See, e.g., id.* at *8-9 (ruling that "the Court will terminate Brock's location monitoring condition" after learning that "Brock has fully complied with his release conditions to date, and his PSA agent – who has worked closely with him for over six months now – no longer believes that location monitoring is necessary to ensure compliance moving forward"); *id.* at *11 ("without further explanation from the government as

---

[2] The omission is even more surprising since Justin Sher is listed as counsel of record in both cases.

to how a curfew is necessary to reasonably assure the community's safety or Brock's appearance, the Court will deny that request.").

Even if it were her burden to justify relief here, Ms. Eisenhart's proffer of six months of full compliance, to the full satisfaction of her U.S. Pretrial Officer who initiated this request, as well as Ms. Eisenhart's right to engage in basic activities of life such as exercise and to seek and obtain employment opportunities during other work hours, justify elimination of these current requirements (including the restrictive curfew) that have limited both her lifestyle and livelihood. There is no principled reason why she must stay on such conditions when Larry Brock will not.

WHEREFORE Ms. Eisenhart's bond should be modified as U.S. Pretrial has requested.

Dated   August 24, 2021						Respectfully submitted,

					     /s/ Gregory S. Smith
					Gregory S. Smith (D.C. Bar #472802)
					Law Offices of Gregory S. Smith
					913 East Capitol Street, S.E.
					Washington, D.C.  20003
					Telephone: (202) 460-3381
					Email: gregsmithlaw@verizon.net

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is automatically being served upon all counsel of record, via the Electronic Case Filing system.

This 24th day of August, 2021.

					     /s/ Gregory S. Smith
					Gregory S. Smith