**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CR-00118-RCL-1** |
| | ) | |
| **ERIC GAVELEK MUNCHEL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY HEARING IN SUPPORT OF HIS CLAIM OF SELECTIVE PROSECUTION

**COMES NOW** Defendant, Eric Gavelek Munchel (Mr. Munchel), by and through undersigned counsel, and respectfully tenders his Motion for Discovery and for an Evidentiary Hearing in Support of His Claim of Selective Prosecution and in support thereof states:

### INTRODUCTION

Mr. Munchel recognizes that he brings his motion and request into the broader litigation tapestry of the so called "January 6th Defendants". Mr. Munchel further recognizes that many of these Defendants have presented a familiar set of issues to their various presiding judges without success. In fact, as far as Mr. Munchel is aware, no selective prosecution claims by January 6th Defendants have been sustained to date, even in matters of discovery. It is also recognized that stare decisis presents a daunting standard for Mr. Munchel to so demonstrate his claim. Nonetheless, Mr. Munchel firmly believes that his prosecution, at least in part, demonstrates a colorable case of selective prosecution.

The larger context in which this motion comes before the Court is that the nation itself is significantly polarized, both with substantive issues such as abortion, the economy, immigration, and non-substantive issues such as one's right to simply disagree with his or her

1

fellow citizens. This ever-exacerbating caustic division directly impacts and divides the electorate on every level, not the least of which is the federal government. The events of January 6th, 2021 are directly a product of this polarization with assertions, some of which have been since substantiated[1], that significant illegal influence was exerted by those of a certain political persuasion or under the direction of those so persuaded, over the outcome of the 2020 presidential election.

It is stating the obvious to point out that the winner of the presidency comes into office with the obligation to appoint an Attorney General, the highest position in the Department of Justice, under whose direction and control the Department of Justice will preside over the continuing investigation and prosecution of the various participants of January 6, 2021. This must raise the question, and Mr. Munchel does so here, as to whether the government, in its prosecution of Mr. Munchel, has exercised appropriate prosecutorial discretion or if it has crossed the line and is using its vast power in pursuing a path of selective, discriminatory, and vindictive prosecution.

As Mr. Munchel has had opportunity to consider his own case and treatment in context of the treatment of others who, based on behavior and circumstances, are, by any reasoned review, similarly situated to himself, he is left with no other conclusion than that he is not being treated evenly or fairly as contemplated by our law and Constitution. He is further forced to

---

[1] https://www.foxnews.com/media/twitter-files-part-9-vast-web-coordination-between-tech-giant-cia-state-department

https://www.foxnews.com/media/twitter-files-part-7-fbi-doj-discredited-information-about-hunter-bidens-foreign-business-dealings

https://www.foxnews.com/media/twitter-files-part-6-reveals-fbis-ties-tech-giant

conclude that others of different class and political persuasion are treated with demonstrably greater leniency, or even outright clemency by the investigative and prosecutorial departments of the government. Further, Mr. Munchel finds it compelling to his assertion that he can look around the nation and see that during the protests and demonstrations in D.C. and elsewhere, protesters are treated substantially different than he. Mr. Munchel notes that other January 6th Defendants have raised the selfsame issue and to date have not prevailed thereon, however, presented here are the issues which he finds most compelling.

### D.C. Climate Protests

Mr. Munchel faces prosecution on allegations that his political activism resulted in acts of violence, trespassing on restricted federal property and other violations of federal criminal code. Since that time, he has had the opportunity to observe the media coverage of the 2021 Climate Protests. These protests were led, in part, by Native Americans who are concerned about environmental issues. At the outset, it is noted that even a casual observer of the American political scene could surmise that President Biden's administration is more favorably disposed to climate protestors and Native American protestors than to supporters of former President Trump and those whose political persuasion would align with his platform.

At a hearing of the United States House of Representatives, House Committee on the Judiciary, held on October 21, 2021, in which Attorney General Merrick Garland testified, Representative William Steube questioned Mr. Garland about the disparate treatment of the climate protestors and the January 6th Defendants who demonstrated at the Capitol. In his questioning of the Attorney General, he summarized the activities of concern as follows:

> Attorney General Garland in your Senate confirmation hearing you
> referred to the January 6 protests as the -- and I quote "***most***
> ***dangerous threat to democracy in your law enforcement and***

*judicial career.*" In that same hearing you even compared January 6 to the Oklahoma city bombing case you worked on where 168 people were killed and June 15th a speech announcing a new enhanced domestic terrorism policy you cited January 6 as a -- as a motivation for that new policy. You went on to describe January 6 and I quote "as an assault on a mainstay of our democratic system." You have said that prosecuting extremist attacks on our democratic institution remain central to the mission of the Department of Justice so suffice it to say it's clear that you feel very strongly about using the full force of your position to prosecute those involved in the January 6th protest. What is not clear however is if you will use the same force against violent left wing domestic terrorists. Just last week on October 14th a group of extremist environmental and indigenous protestors forced their way into the Department of the Interior. ***They fought with and injured security and police officers sending some of those officers to the hospital. The extremists violently pushed their way into a restricted government building in an attempt to thwart the work of the department of interior.*** Police arrested at least 55 protesters on site,

but others got away. . . .[2] (emphasis added.)

During this exchange, the Attorney General was asked to compare the attempted forced entry of the Capitol at the January 6th protest and the Department of the Interior building during the climate protest. He declined to make any comparison, stating that he was unaware of the climate protest activity. This demonstration by the Attorney General of being selectively informed regarding televised acts of violence against government entities is troubling to say the least, if not directly demonstrating Mr. Munchel's conclusions regarding selective prosecution.

As per Congressman Steube's description of events, the similarities are glaring. Mr. Munchel is also accused of interfering with a government proceeding and being unlawfully present of federal property. In response to the October 14, 2021 protests, "An Interior Department spokesperson said a group of protestors rushed the lobby, injuring at least one

---

[2] https://www.youtube.com/watch?v=pM1wMb3NA1s

security officer who was taken to a nearby hospital. Police and protestors clashed outside the building, and a spokesperson for the protest group accused officers of using stub guns against several unarmed protestors.[3]" Another account explained that "pushing and shoving resulted in 'multiple injuries' sustained by security personnel, with one officer being transported to a nearby hospital, said Jim Goodwin, a spokesman for U.S. Department of Homeland Security's Federal Protective Service.[4]"

At a related event in this series of protests, the protest occurred at the White House. At that event, it was reported that 136 people were arrested[5]. At the White House Protest, barricades and police lines were erected and challenged by protestors who were actively pushing barricades into the police line in a manner reminiscent of the January 6th, 2021 protest. As far as can be determined at this time, the majority of persons arrested were either not charged at all or were ticketed and released. None seem to have been charged with federal crimes[6].

### Portland

Although the Motion presented in *United States v. Kelly Meggs,* Case No. 1:21-CR-00015(APM) was denied by the Court, Mr. Munchel adopts the (edited) statement of facts presented by the Defendant in his motion:

> Since May 26, 2020, federal law enforcement authorities have arrested 100 people for crimes committed during local demonstrations. Seventy-four faced federal charges, including felonies, misdemeanors, and citation violations. Alleged crimes include assaults on federal officers, some resulting in serious injuries; arson and attempted arson; damaging federal government property;

---

[3] https://wtop.com/dc/2021/10/hundreds-arrested-during-ongoing-climate-protests-around-dc/
[4] https://insideclimatenews.org/news/15102021/indigenous-climate-activists-arrested-after-occupying-us-department-of-interior/
[5] https://www.desmog.com/2021/10/11/indigenous-136-arrested-white-house-fossil-fuel-protest/
[6] Efforts to locate any federal prosecutions continue.

failing to obey lawful orders; and unlawful use of a drone; among others7. It was reported "that the protest is a continuation of a daytime march that occurred this afternoon.8" ". . .Footage showed the rioters attempting to force their way into the courthouse while chanting "f*** the United States!9" Id. 'Later in the evening rioters set a fire outside the courthouse entrance.10' The federal Court House closed for weeks under attack and burned11. … According to the federal government, the protests in Portland include several assaults on federal officers: After repeatedly defying verbal commands to move back, one defendant "placed his right arm around the neck of CBP officer 1 in headlock maneuver." When another officer came to "remove [defendant's] right arm from around the neck of Officer 1… all three individuals went to the ground." At the time, the defendant "was carrying a leaf blower and a shield." United States v. Judd, case no. 1:21-cr-00040, ECF 138 pp.3-4 (citing United States v. Bouchard, case no. 3:20-mj-00165 (D. Ore. July 24, 2020), ECF 1-1, at 4-5. (The Exhibit documents federal charges and dispositions of 39 defendants arrested with charges including 18 U.S.C. §111(a)(1), Assaulting a Federal Officer beginning on May 26, 2020, in Portland, Oregon.) Nearly all of the charged were dismissed or marked nolle prosequi, with one action pending, (and who was dismissed because he died before they could dismiss [sic]); and for the few that remained, the government agreed to recommend probation. Id. The government acknowledged in its Opposition on the Judd motion that, "[a]lthough it is true that each case was eventually dismissed by the government for unknown reasons (typically after the defendants repeatedly agreed to waive their rights to a preliminary hearing or indictment over a period of months), all were initially facing felony charges.)." Gov't. Opp. Doc. 154 at 17 (emphasis added). Those felony charges, however, did not include 18 U.S.C. §2384, §1512(c)(2) and 2, or § 1512(k).

---

7 See: Press Release, 74 People Facing Federal Charges for Crimes Committed During Portland Demonstrations (Aug. 27, 2020), available at https://www.justice.gov/usao-or/pr/74-people-facing-federal-charges-crimes-committed-during-portland-demonstrations (last visited January 10, 2023)

8 See: Rioters Set Fire to Federal Courthouse in Portland One Day after Fencing Removed (yahoo.com) Zachary Evans, Rioters Set Fire to Federal Courthouse in Portland One Day after Fencing Removed https://news.yahoo.com/rioters-set-fire-federal-courthouse-162333860.html

9 Id.

10 "Demonstration Devolves into Riot July 4 to 5 2020-Arrests Made, Firearm Recovered (Photo), by Portland Police Bureau: https://twitter.com/portlandpolice/status/1279756488643411968

11 See Portland Police Chief Slams Violence At Riots | National Review, August 6, 2020, Zackary Evans, https://www.nationalreview.com/news/portland-police-chief-slams-incomprehensible-violence-says-rioters-targetlocal-officers-with-mortars-and-commercial-grade-fireworks/ Case 1:22-CR-00015(APM) Document 189 filed 07/11/22 Page 8 of 13.

**Senate Confirmation Hearings**

Mr. Munchel adopts the following statement of facts made in *United States v. Ianni*

Case No. 1:21-CR-00045(DLF) (ECF 35):

> During the confirmation hearings for Supreme Court Justice Brett
> Kavanaugh in September and October 2018, more than 200
> protesters were arrested at the Capitol building.[12] On October 5, 101
> people were arrested and charged under either D.C. Code §22-1307
> or DC §10-503.16(b)(4).[13] As on January 6, 2021, Vice President
> Mike Pence was present at and presiding over the session of
> Congress as protestors interrupted.[14] On October 6, large organized
> groups of protesters broke through and climbed over police
> barricades meant to close off certain parts of the Capitol Building;
> some live streamed and posted photographs and videos of their
> unlawful demonstrations on social media .[15] Court records appear to
> indicate that just one protester, who had previous arrests for
> unlawful protest activities, had his case prosecuted in the
> United States District Court[16].

**The Curious Case of Ray Epps**

The comparison to Ray Epps was made by Defendant Deborah Sandoval in *United Staes*

*v. Sandoval, et al.,* Case No. 1:21-CR-00195(CKK) in her selective prosecution motion. Id. (ECF

67). Again Mr. Munchel adopts the statement of facts:

> Thousands of individuals were present at the United States Capitol

---

[12] Breslow, Jason, "The Resistance at the Kavanaugh Hearings," NPR, (Sep. 8, 2018), available at
https://www.npr.org/2018/09/08/645497667/the-resistance-at-the-kavanaugh-hearings-more-than-200-arrests
[13] U. S. Capitol Press Release (October 5, 2018), available at https://www.uscp.gov/media-
center/pressreleases/uscapitol-police-respond-multiple-instances-unlawful-demonstration
[14] Fram, Alan, et al, "Kavanaugh Sworn to High Court After Rancorous Confirmation," AP News, (Oct. 6, 2018),
available at https://apnews.com/article/north-america-ap-top-news-sexual-misconduct-supreme-courts-courts-
8234f0b8a6194d8b89ff79f9b0c94f35
[15] Rosenberg, Adam, "Brett Kavanaugh Protestors Ignore Police Barricades, Occupy the U.S. Capitol," yahoo!news,
(Oct. 6, 2018), available at https://www.yahoo.com/news/brett-kavanaugh-protesters-ignore-police-
194043428.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQ
AAAK_dv53JnNnUin5JikI8bifOcB2QOHRfco98qqFfq8cH8LPaoDk2VTmSLW5yLInYQA1Y4flClVnJOqzL9Nd
mU1aFJEsJUG8FgrMklQTb7LntoFW1LZ_xbfXJiOmtbbXBXzJzbru0qN2perDWxrtMAdlkqZ66xi49XIiWhxAI3L
xC
[16] United States v. Barry, No. 1:18-mj-00111-RMM (D.D.C.).

Building on January 6, 2021, and only slightly over 700 people have been arrested in connection with these events, meaning that many individuals were not arrested or charged in connection with these events. Mr. Ray Epps of Arizona is one example of a person who was present during and even instigated the events of January 6, 2021, but was not charged in connection to these events.[17] Mr. Epps "appears to have worked alongside several individuals – many of them suspiciously unindicted – to carry out a breach of the police barricades that induced a subsequent flood of unsuspecting MAGA protesters to unwittingly trespass on Capitol restricted grounds and place themselves in legal jeopardy."[18]

While Mr. Epps was originally "Suspect 16" in the FBI's Washington Field Office's request for the public's help in identifying suspects from January 6, 2021, and Mr. Epps was featured on the FBI Capitol Violence Most Wanted List, Mr. Epps was removed from the FBI's Capitol Violence Most Wanted List on July 1, 2021.[19] To date, Mr. Epps has never been arrested or charged in relation to the events on January 6, 2021.[20] Furthermore, the FBI and Justice Department have not released any information regarding whether Mr. Epps was served with a search warrant.[21]

Ms. Sandoval alleges that Mr. Epps serves as one example of many individuals who actively participated in and encouraged the events which took place on January 6, 2021, and yet were not indicted for their involvement. Mr. Epps serves as just one example of an individual who is "similarly situated" to Ms. Sandoval who was never indicted for his actions. The existence of Mr. Epps, and the existence of others like him, who participated in the Capitol Breach but were not charged in connection with their actions, demonstrates "some evidence" that Ms. Sandoval was specifically targeted for selective prosecution. Additionally, the FBI's removal of Mr. Epps' image from the Most Wanted list and failure to take any action towards arresting him shows they specifically intended to cause a discriminatory impact on individuals who, like Ms. Sandoval, were charged on January 6, 2021, cases.

Mr. Epps seems to have an uncanny ability to find the spotlight. There is a plethora of video footage showing him at the front of activity and encouraging people to press forward and

---

[17] Meet Ray Epps: The Fed-Protected Provocateur Who Appears to Have Led the Very First 1/6 Attack on the U.S.Capitol, REVOLVER (October 25, 2021), https://www.revolver.news/2021/10/meet-ray-epps-the-fedprotectedprovocateur-who-appears-to-have-led-the-very-first-1-6-attack-on-the-u-s-capitol/
[18] Id
[19] Id
[20] Id
[21] Id

go into the Capitol building, and yet, there are no § 1512 charges leveled against him. In fact, Mr. Epps has escaped all charges for his well-documented participation in the January 6 protest. This juxtaposed with the FBI and Department of Justice efforts to track down even the most obscure participant in the January 6 protests leaves nothing but serious questions regarding the selective abuse of investigative and prosecutorial discretion.

## The Curious Case of James "Jimmy" Knowles

Mr. Knowles, like Mr. Epps, is also present in numerous videos and still shots during the events of January 6, 2021. There exists an apparent association between Mr. Knowles and the Kansas City Proud Boys, and can be found pre-planning with them, marching with them wearing tactical gear, crossing police lines, and entering the Capitol; and yet, on information and belief, he remains uncharged with any crimes at all.

While Mr. Munchel acknowledges that he has no personal knowledge of the political persuasions of either Mr. Epps or Mr. Knowles, these individuals have themselves made declaration to being of the same political persuasion commonly associated with the "Stop The Steal" and "MAGA" movements. It is therefore difficult to argue that these individuals are not similarly situated to Mr. Munchel and the hundreds of other Defendants facing charges for alleged actions of a similar or lesser degree to those of Mr. Epps and Mr. Knowles.

## Legal Argument

In *United States v. Nordean*, Case 1:21-cr-00175-TJK, the Court explained:

> The Executive Branch has "broad discretion" in "enforc[ing] the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) (quotation omitted); United States v. Fokker Servs. B.V., 818 F.3d 733, 741 (D.C. Cir. 2016). Indeed, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." Fokker Servs. B.V., 818 F.3d at 741 (cleaned up). Thus, "the presumption of regularity applies to

[those] decisions and, in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties." Id. (cleaned up).

But the Executive's discretion is limited by the Fifth Amendment, which prohibits the Government from pursuing criminal charges against a citizen that amount to a "'practical denial' of equal protection of law." Armstrong, 517 U.S. at 465 (quoting Yick Wo
v. Hopkins, 118 U.S. 356, Case 1:21-cr-00175-TJK Document 378 Filed 06/07/22 Page 1 of 13 373 (1886)). Claims of "selective prosecution" or "selective enforcement" guard against this possibility. Id.: see also Whren v. United States, 517 U.S. 806, 813 (1996) (the Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race"). Selective prosecution and enforcement claims are subject to the same "demanding" standard. Arm-strong, 517 U.S. at 463; see Mahoney v. U.S. Capitol Police Bd., No. 21-cv-2314 (JEB), 2022 WL 523009, at *8 (D.D.C. Feb. 22, 2022), on reconsideration in part, 2022 WL 1184565 (D.D.C. Apr. 21, 2022) (describing the same two-prong test for selective enforcement and selective prosecution claims); Richards v. Gelsomino, 814 F. App'x 607, 610 (D.C. Cir. 2020) (quoting Armstrong's test for selective prosecution for a selective enforcement claim).

To establish either claim, a defendant must make two showings. First, she must demonstrate that the relevant policy or action "had a discriminatory effect." Armstrong, 517 U.S. at 465; see also Richards, 814 F. App'x at 610. In other words, she must show that the Government afforded "different treatment" to persons "similarly situated" to her. Armstrong, 517 U.S. at 470. When another person's circumstances "present no distinguishable legitimate . . . factors that might justify" different prosecutorial or enforcement decisions between that person and the defendant, that person is similarly situated to the defendant. Branch Ministries v. Rossotti, 211 F.3d 137, 145 (D.C. Cir. 2000) (cleaned up). Courts "narrowly" interpret the phrase "similarly situated." United States v. Stone, 394 F. Supp. 3d 1, 31 (D.D.C. 2019). Second, a defendant must show that the challenged policy or action had "a discriminatory purpose" or intent. Armstrong, 517 U.S. at 465. In other words, she must show that the Government prosecuted, arrested, or otherwise investigated her "because of" her membership in an identifiable group. Wayte v. United States, 470 U.S. 598, 610 (1985); see also Mahoney, 2022
WL 523009, at *8.

## Discriminatory Effect

The discriminatory effect asserted herein, simply stated, is that Mr. Munchel is being subjected to disparate prosecutorial treatment due to his political views and activism. While this motion focuses on a single individual, this prosecution does not occur in a vacuum. The hundreds of protestors who arrived at the Capitol on January 6th would have difficulty finding a similar treatment elsewhere in American history, even if on a lesser scale. The *Armstrong* assessment is made difficult by the systemic nature of the claim. The quest to find a single similarly situated person and event is infinitely more difficult when the spotlight of the Court is so hyper-focused that there seems to be no comparisons. So much so that Mr. Munchel respectfully suggests that the Courts have taken *Armstrong* and have applied this already narrow assessment in the narrowest possible interpretation. And yet, it is not just the January 6th events themselves, but also the federal response that is unique. For each charge that Mr. Munchel faces, numerous other defendants so situated have raised facts of law and comparative analysis to other charges and defendants not associated with January 6 who have fared better in the system.

Narrowing the scope, we can again look at either of the two individuals cited above who were prominently featured in the January 6 protest, or at the myriad examples of similar conduct from around the nation and observe that the discriminatory effect is suggested on the facts. On the other hand, if we compare the global collection of facts and charges and attempt to compare them to the mythical similarly situated case standard so narrowly construed, the result is prosecutorial power left absolutely unchecked by any Court Authority. Stated differently, cases which are factually identical are a rarity in the first place. The collection of 900 January 6 cases produces a vast array of facts which can be used to distinguish any single case in a selective prosecution analysis *as applied*.

**Discriminatory Intent**

The discriminatory intent is evident when we consider the national trends of political protest. It is not a matter of republican and democrat, but rather of favored and disfavored causes and views. Mr. Munchel cannot "look behind the curtain" of the Department of Justice or the Federal Bureau of Investigation and point to the directive or memo mandating the selective prosecution of former President Trump's supporters. However, he can apply a reasonable standard of simple logic and note the drastic differences in the government's response to protestors who stormed government buildings, overran police lines and barricades, injured officers and government personnel and yet are given a "pass" from the DOJ and FBI alike and is left with an ever-fading hope in this nation's application of justice and equity.

Others, with more information and access have commented on this disparate treatment and surmised a discriminatory purpose. By way of example, the Republican Staff Report for the United States House of Representatives Committee on the Judiciary (November 4, 2022), hereinafter, *Staff Report*, asserts in its rather inflammatory report:

> The Federal Bureau of Investigation, under the stewardship of Director Christopher Wray and Attorney General Merrick Garland, is broken. The problem lies not with the majority of front-line agents who serve our country, but with the FBI's politicized bureaucracy. The problem lies, for example, with the FBI hierarchy that spied on President Trump's campaign and ridiculed conservative Americans. The problem lies with FBI bureaucrats who altered and mischaracterized evidence to federal courts, circumvented safeguards, and exploited weaknesses in policies governing investigations and informants to target politically disfavored subjects and to protect favored ones. The problem lies with the FBI structure that centralizes high-profile cases in D.C., in the hands of politicized actors with politicized incentives. Quite simply, the problem—the rot within the FBI—festers in and proceeds from Washington. Id. Page 2 of 1050.

The *Staff Report* goes on to make specific statements and conclusion about the

prosecutorial intent on the January 6 cases:

> "Whistleblowers describe how the FBI has abused its law enforcement
> authorities for political purposes, and how actions by
> FBI leadership show a political bias against conservatives." Id. Pg.
> 2.
> Following Committee Republicans' July 27, 2022, letter to Director
> Wray, new whistleblowers came forward with information about
> how the FBI manipulated the manner in which it categorized
> January 6-related investigations to create a misleading narrative that
> domestic terrorism is organically surging around the country. These
> new whistleblower disclosures indicate that the Washington Field
> Office's (WFO) handling of DVE investigations relating to January 6
> "diverge[s]" from established practice in a way that overstates the
> national DVE threat. Id. Page 10. Citations omitted.

> "The whistleblower alleged that "the FBI has not followed regular
> procedure" with respect to January 6 cases" Id.

> "Whistleblowers allege that the FBI is manipulating data about
> domestic violent extremism to support the Biden Administration's
> political agenda. Other information suggests the FBI prioritizes
> investigations and uses differing tactics based on political
> considerations—using aggressive tactics against political opponents
> of the Biden Administration while going softer on, or outright
> ignoring, allegations against the Administration's political allies."
> Id. Page 8.

> "...selective enforcement of federal law is evident in how the Justice
> Department has aggressively pursued prosecutions related to
> January 6, 2021, while virtually ignoring federal crimes stemming
> from left-wing riots in the summer of 2020." Id. Page 8.

> "In addition, the whistleblower disclosed that the FBI is sacrificing
> its other important federal law-enforcement duties to pursue these
> January 6 investigations. The whistleblower recalled, for example,
> being "told that child sexual abuse material investigations were no
> longer an FBI priority and should be referred to local law
> enforcement agencies." This decision to ignore such serious crimes
> is a dereliction of the FBI's mission to investigate violations of
> federal laws and a disservice to the victims of child sexual abuse
> crimes." Id. Page 11.

"There appears to be a disparity in how the FBI and Justice Department are pursuing January 6-related matters. Compounding this appearance is how the FBI has failed to fully respond to inquiries from Congressional Republicans on this matter while providing information to the partisan Democrat-led Select Committee investigating the events of January 6, 2021." Id. Page 41.

Even granting  the partisan nature of the *Staff Report*, the assertion of bias is made by persons with greater access to information (here, Whistleblowers and Congressional staffers) that there is systemic partisan political motivation within the FBI and the Justice Department as a whole which is focused on Donald Trump and his January 6 supporters. The assertion here is that discriminatory affect and intent is discernable but requires looking at a bigger picture.

The significant hurdles articulated in *Armstrong* have been discussed by every Court ruling on a January 6th selective prosecution motion. Theoretically at least, "[t]he similarly situated requirement does not make a selective-prosecution claim impossible to prove." *Armstrong* at 466. Yet, as applied in the District, they may well be exactly that. For example, in *United States v. Ianni*, Judge Nichols concluded that, "The particular combination of circumstances at issue here- including entering the Capitol while it was closed to the public; being among a very large demonstration; being among a crowd in which others were aggressive or violent (some shockingly so); and targeting a highly sensitive Congressional proceeding- are too different from any example or combination of examples that *Ianni* has pointed to for a claim of selective prosecution." Id. (ECF 40). Looking at only one of these points of comparison, the "targeting of a highly sensitive Congressional proceeding" would eliminate the majority of selective prosecution claims presented in January 6 cases.

In a similar fashion, Judge Nichols stated, "But there are obvious differences between those, like Miller, who stormed the Capitol on January 6, 2021, and those who rioted in the

streets of Portland in the summer of 2020. The Portland rioters' conduct while obviously serious, did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power." *United States v. Miller*, No. 1:21-CR-00119 (ECF 67).

This Court previously addressed some of the issues raised in this motion in *United States v. Brock*, 1:21-CR-00140. In its Memorandum Opinion, the Court stated:

> Brock focuses primarily on the Portland protestors, arguing that they are "similarly situated" to January 6th defendants such as himself. Selective Prosecution Mot. At 3-5. They are not. As other courts have found, the mob on January 6th-of which the government alleges Brock was a part-"endangered hundreds of federal officials in the Capitol complex," including Members of Congress and their staffs, Vice President Pence, and the United States Capitol Police.
>
> Other factors, such as the alleged purpose of the January 6th defendants' actions-obstructing the certification of the Electoral College vote-could also justify differences in the prosecutorial behavior. Id. (ECF 58).

Taken collectively, these cases and perhaps others have created a bar so high that it cannot be cleared by a January 6th Defendant. There can be no doubt that a selective prosecution motion calls on the Court to make a comparative analysis between two individuals, one charged, and one similarly situated who is not charged. The theoretical construct of a selective prosecution motion brought by a January 6th Defendant is going to be that this Defendant was subject to a discriminatory effect and intent due to his or her political disposition. In support of that assertion, Defendant is obliged to satisfy the *Armstrong* "rigorous standard". He can only do that by finding a similarly situated but uncharged individual. By extrapolation from the above holdings, the, Mr. Munchel would necessarily be looking for an uncharged individual who, in broad daylight, entered the Capitol building at a time when it was closed to the public, who was part of a large demonstration focused on a highly sensitive Congressional proceeding prescribed by the Constitution and established to ensure a peaceful transition of power, and the net effect of

the activity was that it obstructed the certification of the Electoral College vote while endangering hundreds of federal officials on the Capitol Complex. Presumably, absent that "minimal showing", any comparison would result in the determination that the two individuals are not similarly situated.

Given that stringent standard, it would seem that only another January 6th participant could be expected to meet the standard. In limiting the acceptable comparison to other January 6 cases, the Court has taken the analysis far beyond anything anticipated by the *Armstrong* Court. Thus, the *Armstrong* Court's assertion that the standard does not make the claim impossible no longer seems accurate, either in the January 6 cases, or any subsequent cases. The very protections that the selective prosecution jurisprudence offers are neutralized by the Courts narrow and stringent application of the *Armstrong* standard.

### Conclusion

The hesitation by the Courts to "trump" prosecutorial discretion is noted. The difficulty in stating a case of selective prosecution is also noted. It is respectfully submitted that prior decisions in this District and in this Court have created a hurdle which is impossible and beyond that reasonably anticipated by the *Armstrong* Court. The difficulty in presenting a case without discovery is evident. Nonetheless, Mr. Munchel asserts that he has presented the Court with a compelling case of selective prosecution and therefore requests appropriate and reasonable discovery in order to discovery facts necessary to the litigation of the issue.

**WHEREFORE** Defendant respectfully prays this Court find that sufficient evidence has been submitted demonstrating the reasonable likelihood of selective prosecution in his case; find that the production of discovery relevant to the assertions contained herein is necessary for Mr.

Munchel and this Court to fully ascertain the scope of the allegations and provide an accurate and true accounting of the prosecutorial practices in relation to January 6 Defendants as a whole, and Mr. Munchel in particular; find that an evidentiary hearing is necessary to fully appreciate the scope and context of the allegations contained herein; and for such other and further relief as this Court shall deem just and proper on the premise.

Respectfully submitted,

_____
Joseph W. Allen, MO BAR #57669
1015 W. State Hwy. 248 Ste. I
Branson, MO 65616
Telephone:  417/334-6818
Facsimile:  417/612-7081
joe@mybransonattorney.com
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March 2023, I filed the foregoing Motion for Discovery and an Evidentiary Hearing in Support of Claim of Selective Prosecution and a proposed Order by the Court's CM/ECF system. All case registered parties will be served by CM/ECF.

_____
Joseph W. Allen

17