**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                           )
UNITED STATES OF AMERICA                   )
                                           )
        v.                                 )   Case No. 1:21-cr-118 (RCL)
                                           )
LISA MARIE EISENHART                       )
_____  )

<u>**MOTION FOR PRETRIAL DISCOVERY**</u>

NOW COMES defendant LISA MARIE EISENHART, by and through undersigned counsel, and hereby files this motion for the production of pretrial discovery related to her defense.  The Defendant has requested pretrial discovery designed to maximize her chances of receiving a fair trial, and to minimize the risk of delays, disruptions or even a new trial or reversal that could be caused by unnecessary and unwarranted delays in pretrial disclosure.  *See* Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").

<u>SPECIFIC DISCOVERY SCOPE</u>

Pursuant to Defendant's due process and other constitutional rights, as well as the Federal Rules of Criminal Procedure and other authorities cited below, the Defendant believes she is entitled to the following pretrial information, and requests that it be provided no later than one month prior to the scheduled start date for the trial in this case, unless otherwise indicated below.

**(1)** <u>**Statements**</u>

    **(a) Defendant's Written or Recorded Statements [Fed. R. Crim. P. 16(a)(1)(B)].** The Government should produce immediately (1) Any relevant written or recorded statement by the defendant within the possession, custody or control of the government that is known, or that through due diligence may become known, (2) Any reference in any written record of any oral statement made before or after arrest by the defendant to a person known by the defendant to be a government agent, and (3) Defendant's grand jury testimony (if any exists) relating to the charged offenses.

    To the extent that the Government claims that no such statements by the Defendant exist, or that all such statements have been disclosed, the Government should provide written assurances that it has exercised due diligence to confirm this, and immediately provide any additional statements found to be within the government's possession, custody or control.

    **(b) Defendant's Oral Statements [Fed. R. Crim. P. 16(a)(1)(A)].** The Government should produce immediately the substance of any oral statements made by the defendant, whether before or after interrogation by any person then known by the defendant to be a government agent or law enforcement officer, that the government intends to use in any manner at trial – regardless of whether any written record of the statement exists. In the event the government intends to use such an oral statement at trial, then consistent with Fed. R. Crim. P. 16(a)(1)(A), that statement should be reduced to writing and produced. This request includes, but is not limited to, the substance of the defendant's response to *Miranda* warnings. The Government should also ask each law enforcement agency involved in investigating this case to search its files for responsive information.

    **(c) Defendant's Prior Record [Fed. R. Crim. P. 16(a)(1)(D)].** The Government should produce immediately a copy of the defendant's criminal record within the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known to the Government. This request includes the defendant's entire criminal record, including all arrests and offenses regardless of conviction or severity. It also includes all matters that may affect the defendant's criminal history score pursuant to U.S.S.G. Chapter 4.

**(2)** <u>**Documents, Data and Objects.**</u> The Government should immediately produce:

**(a) Documents, Data or Objects Material To Preparing A Defense [Fed. R. Crim. P. 16(a)(1)(E)(i) and _Brady v. Maryland_, 373 U.S. 83 (1963)].** The Government should permit the inspection, copying or photographing of all documents, data or tangible objects within the possession, custody or control of the Government that are material to the preparation of the defense. This materiality burden "is not a high one," and it includes information that is both helpful to a defense and inculpatory. _See United States v. Safavian_, 233 F.R.D. 2, 15 (D.D.C. 2006) (it is just as important for the defense to know its potential pitfalls as well as its strengths). This rule requires production of more than simply material that directly refutes the Government's case-in-chief. _See United States v. Armstrong_, 517 U.S. 456, 462 (1996) ("defendant's defense" in Rule 16(a)(1)(E)(i) means "defenses in response" to the Government's case-in-chief. _See also id._ (Souter, Breyer & Ginsburg, JJ., concurring) ("material to the defense" may include defenses unrelated to the merits, such as a Speedy Trial Act claim, forseeable surrebuttal to a likely government rebuttal, and defenses such as alibi, self-defense, duress, insanity, entrapment and public authority). The goal of the production should be not only to produce documents that "significantly … alter the quantum of proof in [the defendant's] favor," _United States v. Ross_, 511 F.2d 757, 763 (5th Cir. 1975), but also documents that are "relevant to the development of a possible defense." _United States v. Mandel_, 914 F.2d 1215 (9th Cir. 1990). This request specifically includes, but is not limited to, any polygraph test given to any witness, informant, or other individual – including specifically any cooperating individuals – as well as a written summary of the questions asked, responses given, and examiner's conclusions. It also includes all statements, criminal records and any presentence reports prepared for any cooperating witnesses or informants that the Government has utilized.

**(b) Material Government Intends To Use In Its Case-in-Chief [Fed. R. Crim. P. 12(b)(4)(B) & 16(a)(1)(E)(ii)].** The Government should produce or otherwise make available all documents, data and tangible objects, including tape recordings and transcripts, which the government intends to use as evidence in its case-in-chief. In this regard, the Government also should produce any index or working exhibit list of items it intends to introduce at trial. _See United States v. Madeoy_, 652 F. Supp. 371, 375 (D.D.C. 1987) (within court's discretion to order Government to provide witness or exhibit list); _United States v. Falkowitz_, 214 F. Supp. 2d 365, 392 (S.D.N.Y.) (ordering Government to produce working copy of exhibit list before trial began). The Government should also separately identify any materials being produced in this category from the materials being produced in other categories.

**(c) Material Obtained From or Belonging To Defendant [Fed. R. Crim. P. 16(a)(1)(E)(iii)].** The Government should produce all materials obtained from or belonging to the Defendant that are within the possession, custody or control of the Government, regardless of how obtained or the identity of the person who obtained them.

**(3)  Reports of Examinations and Tests [Fed. R. Crim. P. 16(a)(1)(F) and *Brady*].**

The Government should produce all results or reports of physical or mental examinations, and scientific tests or experiments within the possession, custody or control of the Government, or that by the existence of due diligence may become known to the Government, and which are material to the preparation of the Defendant's defense or are intended for use by the Government as evidence in chief at trial. This request, like Request (2)(a) above, includes, but is not limited to, any polygraph test given to any witness, informant, or other individual, as well as a written summary of the questions asked, responses given, and examiner's conclusions.  It includes any DNA testing results, including any findings that the results of DNA testing were "inconclusive." It also includes any scientific tests and any lab notes or other memoranda that may be related to that testing, whether handwritten or otherwise.  In the event that the results of any scientific tests were reported orally to the prosecutor or to any Government official or law enforcement officer, the Government should also cause a written report of the results to be made and produced, consistent with its obligations under *Brady* and Fed. R. Crim. P. 16(a)(1)(G).  To assure compliance with this request, the prosecutor should contact each law enforcement agency involved in the investigation or prosecution of this case to determine whether relevant examinations or tests were conducted, and if so, those results or reports should be produced.

**(4)  Expert Witnesses [Fed. R. Crim. P. 16(a)(1)(G)]**

Pursuant to Rule 16(a)(1)(G), in the event the Government intends to offer any expert testimony under the Federal Rules of Evidence through any witness, including a government agent or employee or law enforcement officer, it should prepare and produce a summary of the witness' opinion testimony, the grounds or basis for any such opinion testimony and the qualifications of each such expert witness. Even if a summary does not currently exist, the prosecutor must order one prepared to comply with this request.  *See* Rule 16 Advisory Committee Note to 1993 Amendments.  The facts and data on which the expert's opinion are based should be disclosed as a part of the report.  *See, e.g., United States v. Wilkerson*, 189 F.R.D. 14, 16 (D. Mass. 1999) (Rule 16(a)(1)(G) is intended to require disclosure of more than required by Rule 16(a)(1)(F)).  This production should also occur sufficiently in advance of trial so that the defense will have adequate time to react as needed, by filing a motion in limine, or by exploring the option of retaining a rebuttal expert witness, in order to assist in the cross-examination of such experts or by testifying in the defense's case.

If the Government intends to offer at trial any opinion testimony of law enforcement officers, the Government should also similarly provide a summary of their anticipated testimony, and the basis for any opinions that the Government will seek to classify as "lay" testimony under Rule 701.  Any such opinions stem from the agents' specialized knowledge and experience, so the Government should produce expert summaries and comply with all of Rule 16(a)(1)(G)'s other requirements, or face exclusion of the evidence under Fed. R. Crim. P. 16(d)(2).  *See United States v. Finley*, 301 F.3d 1000, 1016-17 (9th Cir. 2002) (court may exclude expert testimony when the notice is not adequate). *See also United States v. Cruz*, 363 F.3d 187, 194-95 (2d Cir. 2004) (courts must be "especially vigilant" to the danger that expert testimony "will stray from applying reliable methodology and convey to the jury sweeping conclusions about the defendant's activity in a given case").

The need for pretrial disclosure is particularly acute in this context of opinion evidence. Experts may base their opinions on facts and data that "need not be admissible in evidence." Fed. R. Evid. 703. Accordingly, Rule 16(a)(1)(G)'s pretrial disclosures assist a defendant not only in testing an opinion, but also in making evidentiary objections and filing motions in limine as necessary to prevent prejudice when hearsay that would otherwise violate her Sixth Amendment confrontation rights, or other inadmissible evidence, would reach a jury only indirectly through opinion testimony. This Court is also expected to perform a "gatekeeping" funciton in determinining the admissibility of both scientific and the type of "soft" expert testimony that the Government may seek to introduce in this case through its officers. _Kumho Tire Co. v. Carmichael_, 526 U.S. 137 (1999) ("The trial court must have … latitide in deciding _how_ to test an expert's reliability, and to decide whether and when special briefings or other proceedings are needed to investigate reliability") (emphasis added). This determination is best made pretrial, _see_ Fed. R. Crim. P. 12(e); Fed. R. Evid. 103(c) (suggesting that a court should resolve significant evidentiary issues when possible before trial and outside the hearing of the jury), which necessarily means that discovery under Rule 16(a)(1)(G) must be provided pretrial.

## (5) "Lay Opinion" Witnesses and Evidence [Fed. R. Evid. 701]

The Government should identify in advance of trial any witness who may present evidence or testimony at trial that the Government will claim is admissible under Fed. R. Evid. 701 as "lay opinion" evidence. While the line between lay and expert testimony is sometimes difficult to draw, this Circuit's view of what Rule 701 allows as "lay opinion" tesimony has been recognized as among the most limited among the Circuits. _See United States v. Johnson_, 617 F.3d 286, 292-93 (4th Cir. 2010). _See_ Channick, _You Must Be This Qualified to Offer an Opinion: Permitting Law Enforcement Officers to Testify as Laypersons Under Federal Rule of Evidence 701_, 81 Fordham L. Rev. 3339, 3468 (2013) (comparing Circuits). Even elsewhere, Rule 701's scope has been restricted in recent years; in _United States v. Wilson_, 605 F.3d 985, 1025-26 (D.C. Cir. 2010), for example, the D.C. Circuit agreed with three other Circuits (the Second, Seventh, and Ninth) in holding that "an individual without personalized knowledge of a specific drug conspiracy may not testify about drug topics that are beyond the understanding of an average juror under Rule 701," since "[s]uch a witness may be permitted to testify only as an expert under Rule 702." Early flagging of asserted "lay opinion" witnesses and at least a fair sense of their contemplated evidence will allow Defendant to timely evaluate and possibly challenge that designation, in case such evidence is more properly categorized as an expert (rather than lay) opinion – thereby subjecting the Government to additional required pretrial disclosures. This process will minimize this Court's risks of trial errors, as has been seen in other cases. _See, e.g., United States v. Figueroa-Lopez_, 125 F.3d 1241 (9th Cir. 1997) (testimony should have been evaluated as expert opinion, and excluded because prosecution did not provide proper pretrial notice); _United States v. Maher_, 454 F.3d 13, 24 (1st Cir. 2006).

## (6) Summary Witness or Charts [Fed. R. Evid. 1006]

The Government, in the event that it intends to call any summary witnesses at trial or to present evidence in the form of a chart, should produce in advance of trial all of the original documents, tape recordings or other source data on which such testimony or chart is based, so that the defense can analyze the underlying information, evaluate the proposed testimony or charts, file any appropriate motions in limine, and consider rebuttal witnesses or charts for the defense without the need to seek a continuance that may delay the trial.

**(7)  Brady/Giglio Material**

Pursuant to _Brady v. Maryland,_ 373 U.S. 83 (1963) and _Giglio v. United States,_ 405 U.S. 150 (1972), the Government should produce any and all exculpatory material that relates to or has a bearing on guilt or punishment, including all impeachment evidence or information that is within its possession, custody or control.  The Government should produce this material immediately, or as soon thereafter as it comes within its possession, custody or control after diligent Government efforts, so that defendant can use it effectively in the preparation and presentation of her defense. _United States v. Pollock_, 534 F.2d 964, 973 (D.C. Cir. 1976); _accord United States v. Presser_ , 844 F.2d 1275, 1283 (6th Cir. 1988); _United States v. Starusko_, 729 F.2d 256, 261 (3d Cir. 1984); _United States v. Recognition Equipment, Inc.,_ 711 F. Supp. 1, 4 (D.D.C. 1989).  The Government also should exercise diligence in seeking such evidence, since the due process clause prevents suppression of exculpatory material irrespective of the good faith or bad faith of the prosecutor. Pursuant to _Giles v. Maryland_, 386 U.S. 66, 74 (1967), the Government also should produce any favorable evidence that could be used "in obtaining further evidence."

In this particular case, this request specifically includes a demand that the Government make available (to defense counsel and any defense forensic expert that may be hired) the cellphone of the alleged victim in this case, which the defense understands is now in the possession of the Government, will full defense access granted as to all data maintained on that cellphone.  In the event that the Government refuses to produce this evidence as requested, it also must refrain from returning that cellphone to the alleged victim until this motion can be decided by this Court. The defense also requests a copy of any and all "radio runs" in the Government's possession, custody and control, including any radio runs held by any law enforcement officer or employee.

If the Government believes that any _Brady_ or _Giglio_ material need not be produced immediately because it is also Jencks Act material, the Government should present such evidence to the Court for _in camera_ review and an evaluation of pretrial need, with the defense to be provided with a summary of the general nature of the evidence.  If the Government refuses to provide any information that might arguably be considered to be _Brady_ or _Giglio_, or that is exculpatory or impeaching as to any charge, defense, or punishment, based on a Government belief that such evidence or information is somehow not "material," or based on its unilateral assessment of a witness' credibility, or if any doubts whatsoever exist with regard to whether certain information might constitute _Brady or Giglio_ material, the Government should submit all such material or information to the Court, with notice to the defense, for review _in camera_ to resolve those issues.  _Cf. Sellers v. Estelle,_ 651 F.2d 1074, 1077 n.6 (5th Cir. 1981); _United States v. Gleason_, 265 F. Supp. 850, 886 (S.D.N.Y. 1967) (favorable material that must be disclosed to the defense under _Brady_ need not be competent evidence admissible at trial).

In particular, this request specifically includes, but is not limited to, any and all evidence that may bear in any way on the actions or credibility of any cooperating individual, including any indications that the cooperating individual may have lied, prevaricated, changed his or her story to investigators or others, failed to be fully candid or to tell the complete truth, covered for others, used controlled substances, or other information that may be useful at trial.

In this regard, and without limiting any of the foregoing requests, Defendant Barnes also specifically references, and incorporates herein, a demand for disclosures and discovery to the fullest extent authorized and described in the Department of Justice Memorandum for Prosecutors, issued by Deputy Attorney General David Ogden on January 4, 2010, to provide guidance and summarize actions taken by the Department in response to the Report of the Department of Justice Criminal Discovery and Case Management Working Group.  The defense also asks this Court to adopt the definition of "favorable" evidence set forth by Judge Friedman in _United States v. Safavian_, 233 F.R.D. 12, 16-17 (D.D.C. 2005).

**(8) Jencks Act Material**

The Government should produce Jencks Act material early enough to furnish the defense with sufficient time to examine and utilize this material in a meaningful way before and during trial, and to prevent the unnecessary delays at trial that would otherwise ensue.  *See United States v. Hinton,* 631 F.2d 769, 781 (D.C. Cir. 1980) (abuse of discretion for a court to deny a request for reasonable delay to allow counsel an opportunity examine witness statements and prepare to effectively use them at trial.).  What that means in terms of timing depends on the specific facts and circumstances of each case.  But this Court has authority, pursuant to the Fifth and Sixth Amendments to the U.S. Constitution, Fed. R. Crim. P. 2 and/or its inherent supervisory powers, to urge the Government to make an early production of Jencks Act materials, or in some situations to override the timing provisions set forth in the Jencks Act.

In *United States v. Hinton*, 631 F.2d 769 (D.C. Cir. 1980), the D.C. Circuit recognized the potential impact of late Jencks Act disclosure upon the defendant's Sixth Amendment rights.  There, during a hearing, defense counsel was provided with "voluminous Jencks material" in the form of FBI 302s.  *Id.* at 781.  The Court held that "in the rush and confusion" of the hearing, counsel failed to recognize "the critical importance of the 302's," and as a result, was deprived of the constitutional right to "informed, professional deliberation of counsel."  *Id.* at 782.  Here, in order to accomplish even a rudimentary investigation as needed to provide effective assistance, and to make fair use of these materials, defense counsel will require production of Jencks Act material well before the jury is sworn.  *See United States v. Holmes*, 722 F.2d 37, 41 (4ᵗʰ Cir. 1983) (providing materials one day before trial began did not "afford[] a reasonable opportunity to examine and digest" the documents); *United States v. Snell*, 899 F. Supp. 17, 24 (D. Mass. 1995) (nothing in Jencks Act preempts a court's ability, consistent with its obligations over case management and due process, to order earlier disclosure than Jencks Act requires).

Under the facts of this case, the defense submits that all Jencks Act material should be disclosed at least one month in advance of the trial, or earlier if that material proves to be particularly voluminous, and in any event, and without exception, before the jury is selected and the parties' opening statements are given, to assist the defendant in achieving a fair trial, and to serve the public interest in expediting the fair resolution of criminal cases.  *See* ABA Standards for Criminal Justice, § 11-2.2*, see, e.g., United States v. Tarantino*, 846 F.2d 1384, 1415 n.12 (D.C. Cir.), *cert. denied,* 488 U.S. 840 (1988*); United States v. Hinton*, 631 F.2d 769 (D.C. Cir. 1980); *United States v. Poindexter*, 727 F. Supp. 1470, 1484-85 (D.D.C. 1989).  It is fundamentally unfair, and would promote gamesmanship and injustice, to permit the Governemnt to sit on witness statements while memories grow stale, only to then dump extensive Jencks Act materials on a defendant who has been forced to complete jury selection, and perhaps give an opening statement, based on incomplete information.

**(9)  Sentencing Information [U.S.S.G. § 6B1.2, p.s. comment]**

The U.S. Sentencing Commission also has encouraged prosecutors prior to the entry of a plea of guilty to disclose to a defendant the facts and circumstances of the offense and offender characteristics, then known to the prosecuting attorney, that are relevant to the application of the sentencing guidelines. U.S.S.G. §6B1.2, p.s. comment. To assist the Defendant in making an informed and intelligent decision regarding the possible or probable consequences of pleading guilty or requesting a trial, the Government should advise the Defendant of any facts and circumstances presently known to the Government or reasonably discoverable within its possession, custody or control, that relate to sentencing issues arising under the sentencing guidelines, or to a calculation of the applicable sentencing guideline range, or to any reason to depart or deviate from any of those guidelines, if the Defendant is convicted of any one or more of the charges in the Indictment.

More specifically, the Government should produce to the defendant, as soon as such information is available, the following information related to this case:

- What guidelines does the government contend are applicable?
- What aggravated offense characteristics, if any, does the government contend are applicable?
- What adjustments, if any, does the government contend are applicable?
- Upon what grounds, if any, will the government seek a departure from the guidelines?
- What criminal history category does the government contend is applicable?

The Government should also provide any information that would bear upon the calculation or computation of the following sentencing and guideline factors:

- Base offense level
- Specific offense characteristics
- Relevant conduct
- Adjustments for criminal history

As noted previously, any *Brady* information that is favorable to the Defendant and material to the court's determination of a sentence under the sentencing guidelines in the event of a plea of guilty or conviction should also be produced.

**(10)  Continuing Discovery Obligations [Fed. R. Crim. P. 16(c)]**

Finally, pursuant to Rule 16(c), the Government, after any production, assertion of a justification for non-production, or a court-ordered discovery deadline, has a continuing duty to advise the defendant of any new information as it becomes available, and should disclose all discoverable information to the defendant immediately thereafter.

WHEREFORE, Defendant now files this motion, laying out her understanding of the

discovery she is properly entitled to receive, and demanding its timely production in this case.

This 6th day of March, 2023.

Respectfully submitted,

_____/s/_____
Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C. 20003
(202) 460-3381
*Counsel for Defendant Lisa Marie Eisenhart*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing motion is being served upon counsel for the

United States through this Court's Electronic Case Filing (ECF) system.

This 6th day of March, 2023.

_____/s/_____
Gregory S. Smith