UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| | : Case No. 1:21-cr-118 (RCL) |
| ERIC MUNCHEL and | : |
| LISA EISENHART, | : |
| Defendants. | : |

Let this be filed.
Royce C. Lamberth
U.S.D.J. 4/18/23

## JOINT STATEMENT OF ELEMENTS AND FACTS FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, defendant Eric Munchel, by and through his counsel, and defendant Lisa Eisenhart, by and through her counsel (collectively, "the parties"), hereby submit a joint statement of the elements and facts to support a stipulated trial in this action.

### I. Elements

#### A. Count One: Conspiracy to Commit Obstruction

The essential elements of the offense of conspiracy to commit obstruction, in violation of 18 U.S.C. § 1512(k), each of which the government must prove beyond a reasonable doubt, are as follows:

1. Defendants Eric Munchel and Lisa Eisenhart in some way agreed to try to accomplish a shared an unlawful plan, the object of which was to corruptly obstruct, influence or impede an official proceeding;

2. The defendants knew the unlawful purpose of the plan; and

3. The defendants willfully, that is, to further the unlawful object of the plan, joined in the unlawful plan.

The term "official proceeding" includes a proceeding before Congress.

### C. Count Three: *Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon*

The essential elements of the offense of entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A), each of which the government must prove beyond a reasonable doubt, are as follows:

1. Defendant Eric Munchel entered or remained in a restricted building or grounds without lawful authority to do so;

2. The defendant did so knowingly; and

3. The defendant used or carried a deadly or dangerous weapon—namely, a Taser—during or in relation to the offense.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

### D. Count Four: *Entering and Remaining in a Restricted Building or Grounds*

The essential elements of the offense of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), each of which the government must prove beyond a reasonable doubt, are as follows:

1. Defendant Lisa Eisenhart entered or remained in a restricted building or grounds without lawful authority to do so; and,

2. The defendant did so knowingly.

### F. Count Six: *Disorderly and Disruptive Conduct in a Restricted Building or Grounds*

The essential elements of the disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), each of which the government must prove beyond a reasonable doubt, are as follows:

1. Defendant Lisa Eisenhart engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds;

2. Such conduct occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions; and

3. The defendant did so knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The terms "restricted building or grounds" and "person protected by the Secret Service" have the same meanings described above in Subsections C and D.

### G. Count Seven: *Unlawful Possession of a Dangerous Weapon on Capitol Grounds or Buildings*

The essential elements of the offense of unlawful possession of a dangerous weapon on Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(1)(A), each of which the government must prove beyond a reasonable doubt, are as follows:

1. Defendant Eric Munchel knowingly entered the Capitol grounds or any of the Capitol buildings; and

2. While he was on the Capitol grounds or in any of the Capitol buildings, the defendant

Page 5 of 18

2. Defendant Eric Munchel and/or defendant Lisa Eisenhart acted willfully and knowingly.

## II.  Facts

### A. The Attack at the U.S. Capitol on January 6, 2021.

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police ("USCP"). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18 and requires a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol.

every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### B. *Defendant Eric Munchel's and Defendant Lisa Eisenhart's Participation in the January 6, 2021, Capitol Riot*

8. On January 4, 2021, defendant Eric MUNCHEL traveled with his mother, defendant Lisa EISENHART, from Nashville, Tennessee, to the Grand Hyatt Hotel in Washington, D.C., to participate in advertised 2020 presidential election protest rallies scheduled for January 5-6, 2021. EISENHART rented a hotel room from January 4, 2021, through January 7, 2021.

9. MUNCHEL and EISENHART were aware that on January 6, 2021, Congress was meeting to certify the results of the Electoral College vote for the 2020 presidential election.

10. On January 6, 2021, MUNCHEL and EISENHART left their hotel. MUNCHEL was wearing dark camouflage fatigues, a tactical vest, and a Taser holstered at his hip.

11. The Taser functioned by launching sharp electrodes that deliver an electric shock. That electric shock is designed to incapacitate a person and cause substantial pain. If the target is particularly vulnerable or if the electrode strikes a sensitive area, such as the spine or groin, or a vital organ, such as an eye, the Taser is capable of causing protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

12. EISENHART wore a tactical vest as well.

13. MUNCHEL also wore his cell phone mounted on his chest, with the camera facing outwards. When MUNCHEL and EISENHART arrived at the Capitol, the cell phone that he wore recorded a 50-minute video that captured the majority of MUNCHEL and EISENHART's approach to the Capitol and entry into the Capitol.

MUNCHEL observed that the cops "retreated." EISENHART told MUNCHEL "drop your shit and let's go."

22. EISENHART told an unidentified person "we are going in" and "the gas isn't bad." When asked if they were Proud Boys, MUNCHEL and EISENHART replied that they were not Proud Boys, they were "Proud Americans."

23. MUNCHEL and EISENHART continued to work their way through the crowd. Eisenhart yelled, "Let's go, let's go!"

24. As MUNCHEL and EISENHART approached the scaffolding, erected in anticipation of President-Elect Biden's inauguration, EISENHART stated, "they're putting that up for the stupid inauguration." An unidentified person stated, "for Biden," and another unidentified person responded, "they won't be needing that." EISENHART replied, "that's right."

25. MUNCHEL and EISENHART pushed their way through the crowd gathered on the lawn to continue towards the Capitol. MUNCHEL followed EISENHART, often holding onto the back of EISENHART's tactical vest.

26. EISENHART stated to an unidentified man, "you got the real pepper spray, did you get flashbanged and pepper sprayed?" The unidentified man replied, "I got maced, I punched two [of] 'em in the face." EISENHART replied, "good." EISENHART stated, "while everyone else is on their couch, you guys are training, and getting ready for it."

27. EISENHART joined in chants of "Our house!"

28. EISENHART stated, "this shit is on the news, that guy was saying." MUNCHEL replied, "Oh yeah . . . they are going to use this against us as hard as they can." EISENHART replied, "I don't care. That's fine. They can." MUNCHEL replied, "we ain't playing fucking nice no god damn more." EISENHART replied, "that's right."

42. MUNCHEL directed EISENHART to use her bandana because of the pepper spray and stated, "it's gonna get spicy."

43. MUNCHEL and EISENHART entered the Capitol through the Upper West Terrace Door. The building sirens were audible. Police officers were standing to the right of the door and did not block their entry.

44. MUNCHEL and EISENHART walked up a set of stairs into the Rotunda. MUNCHEL and EISENHART crossed the Rotunda.

45. MUNCHEL and EISENHART went upstairs to the third floor of the Capitol where EISENHART joined in chants of "Treason!" and yelled, "Treasonous bastards!"

46. MUNCHEL stated to EISENHART that they didn't want to get stuck in there because it was "not a place for us."

47. MUNCHEL and EISENHART walked past a sign indicating the direction of the Senate Gallery and continued in the direction of the Senate Gallery.

48. While walking through the Capitol, MUNCHEL told members of the mob "don't vandalize anything," "we aren't Antifa."

49. An unidentified man near MUNCHEL and EISENHART shouted, "1776 all over again!"

50. MUNCHEL told other rioters, "don't break shit," "no vandalizing shit, we ain't no goddamn Antifa, motherfuckers," and "you break shit, I break you."

51. While inside, MUNCHEL and EISENHART spotted plastic handcuffs, known as "zip ties." Upon seeing the zip ties, MUNCHEL shouted "zip ties! I need to get me some of them motherfuckers." MUNCHEL took several zip ties and EISENHART took one. Multiple other individuals took zip ties.

intentions of going in were not to fight the police. The point of getting inside the building is to show them that we can, and we will."

63. EISENHART later told a reporter for the *London Times*, among other comments, that "[t]his country was founded on revolution. If they're going to take every legitimate means from us, and we can't even express ourselves on the internet, we won't even be able to speak freely, what is America for? I'd rather die as a 57-year-old woman than live under oppression. I'd rather die and would rather fight."

64. MUNCHEL and EISENHART jointly agreed to take the above actions and to work in concert with each other.

65. MUNCHEL and EISENHART knew at the time they entered the U.S. Capitol building that they did not have authorization to enter the building.

66. MUNCHEL and EISENHART took the above actions and made the above statements for the purpose of obstructing, influencing, impeding, or disrupting government business, specifically Congress's Joint Session to certify the Electoral College vote results for the 2020 presidential election.

67. The parties agree that all of the above facts are true, accurate, and admissible. The parties further agree that if this case progressed to a traditional jury or bench trial, the government could and would prove all of the above facts beyond a reasonable doubt.

68. The parties will also agree that all of the government's exhibits are authentic, accurate, relevant, and admissible to prove the facts stated above and each of the charged offenses.

69. The parties further agree that if the Court finds the existence of the above facts beyond a reasonable doubt, the defendants stipulate that this evidence would establish each and

## DEFENDANT'S ACKNOWLEDGMENT

I, Eric Munchel, have read this Joint Statement of Elements and Facts for Stipulated Trial and have discussed it with my attorney. I fully understand the elements and the facts that are set forth. I agree and acknowledge by my signature that this Statement of Facts for Stipulated Trial is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Facts for Stipulated Trial fully.

Date: 03/29/2023

ERIC MUNCHEL
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Joint Statement of Elements Facts for Stipulated Trial and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of Facts for Stipulated Trial as true and accurate.

Date: 3/30/23

JOE ALLEN
Attorney for Defendant Munchel