UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 21-CR-00118-RCL-1 |
| ) | |
| ERIC GAVELEK MUNCHEL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW** Defendant, Eric G. Munchel (Mr. Munchel), by and through undersigned counsel, Joseph W. Allen Esq., and for his Sentencing Memorandum states as follows:

### I.   Introduction

Mr. Munchel was one of the participants in the protest that occurred in Washington D.C. on January 6, 2021. This protest has been cast in the light of a riot and insurrection, a threat to democracy and other such fearmongering descriptions. To speak of those events in this manner particularly when discussing an individual defendant is unjust and misleading. Further, this kind of categorization divorces itself from the entirety of the history of this nation. From 1776 to the present, Americans have always undertaken to voice their freedom of self-rule in a boisterous manner. Mr. Munchel is not a rioter nor is he an insurrectionist. He was and is a law-abiding citizen who found himself caught up in the events of a day which began lawfully and peacefully and then devolved into the situation in which he finds himself now. Mr. Munchel regrets his unlawful conduct and has accepted responsibility for it, actions which demonstrate his character. His actions for which he stands before this Court were not planned, nor did he engage in the January 6 protest with any ill intent or malice against his country. In fact, it was precisely his

allegiance to his country which prompted his actions, as erroneous as his perception may have been. He acknowledges his errors in judgment and criminal conduct and is ready to answer for it.

## II.   Facts and Background

The facts of this case are simple. Mr. Munchel traveled to Washington D.C. to protest what he was convinced was an unlawful and corrupt election result. He did so fully within his rights under the First Amendment of the Constitution to petition for a redress of grievances and under the lawfully obtained permits for the protests which had been previously acquired[1]. Mr. Munchel participated in the protest, moving with the crowd, which became more and more agitated. Prior to Mr. Munchel being present at the entrance to the Capitol, a breach occurred which left the Capitol building open and accessible to the protestors. Mr. Munchel was not present when the breach occurred and did not participate in the initial entry. Mr. Munchel does not deny the facts to which he stipulated regarding his entry and ambulation in the Capitol building, nor does he deny his rhetoric.

## III.   Addressing the Government's Position

In presenting his own memorandum regarding sentencing, Mr. Munchel must preemptively address certain points which the Government will no doubt raise.

The statements made by Mr. Munchel are undeniably such as would cause your average person in a reasonable mental state to raise an eyebrow. It is nigh guaranteed that the

---

[1] The Metro PD released their report detailing the various demonstrations and protests which they had prepared for, listing these protests as being permitted events.
https://drive.google.com/file/d/1H3mHiUZCz9jyfDFTTpYw7VuYCgMtuLWW/view

Government will make use of Mr. Munchel's statements in a manner most calculated to outrage this Court in an effort to secure the most extreme sentence. However, it has been held that,

"the First Amendment protects even offensive and inflammatory speech. First Amendment jurisprudence is, of course, replete with cases in which speech even more offensive than that engaged in here was found protected under the First Amendment despite the effects of the speech on the listener." *Gray v. Sobin,* 2014 D.C. Super. LEXIS 1, *24.

And so, while there remains responsibility retained by Mr. Munchel in the fact of what he did say, let this Court consider the circumstances surrounding such statements and the Constitutional protections afforded to all American Citizens, even Lady Liberty's more wayward sons.

It is not denied by Mr. Munchel that his rhetoric, which he has stipulated to having uttered, was aggressive. Mr. Munchel does not seek to excuse what he said as he recognizes in retrospect the excessive nature of his comments. Mr. Munchel humbly asserts that the combination of emotional fervor and his immersion in the mob inhibited his common sense and contributed to his lack of judgment.

Secondly, the Government will no doubt argue that Mr. Munchel's tactical attire (which is evidence of nothing save a certain fashion taste) and his possession of a TASER all demonstrate that, contrary to his own assertion, he was not there to protest peacefully. This is simply not the case. Mr. Munchel, like a vast majority of his fellow protestors, went into the protest on January 6 convinced that ANTIFA would be present to incite violence. ANTIFA has an extensively documented history of countering events where supporters of Donald Trump were gathered[2]. ANTIFA also has a well-documented history of engaging in acts of physical

---
[2] https://www.nytimes.com/article/what-antifa-trump.html
https://www.youtube.com/watch?v=X8SIVkfEO0g

United States v. Munchel, Case No. 21-CR-00118-RCL-1
**DEFENDANT'S SENTENCING MEMORANDUM**
4

violence[3]. Mr. Munchel carried the TASER on the Capitol Grounds as a lawful[4] and non-lethal means of self-defense should ANTIFA have been encountered. That he had the presence of mind to discard any item he may have been carrying that could be considered a lethal weapon prior to entering the Capitol Building demonstrates further that he had no intention of engaging in any kind of combat with law enforcement. The retention of the TASER which he, erroneously, believed was permitted as a non-lethal self-defense tool was due to a lack of knowledge of the rules rather than a calculated plan to enter the Capitol with an offensive weapon. That he violated the law in so doing, he accepts responsibility for, but he would ask this Court to apply its reason to his actions and see that he had no intent to be an aggressor.

The Government will undoubtedly seek to draw an inference, if not make direct assertion, that Mr. Munchel was party to a larger conspiracy that resulted in the events of January 6. This association fallacy fails both the legal and the logical test. Mr. Munchel does not stand here with any other co-defendants aside from his mother. He is not party to any organization nor can the Government point to any other conspirators who Mr. Munchel had any connection to. It is a dangerous line to assert universal culpability for the entirety of the events of January 6 and impugn the same to each individual defendant. This, by necessity, implies and invokes a grand, undefined and ambiguous conspiracy linking all January 6 Defendants. This poses an insurmountable obstacle as the Courts have, on numerous occasions defined a conspiracy as

---

[3] https://www.washingtonpost.com/news/morning-mix/wp/2017/08/28/black-clad-antifa-attack-right-wing-demonstrators-in-berkeley/
https://www.youtube.com/watch?v=fU9IWM_IbgM

[4] The carrying of a TASER is not prohibited on Capitol Grounds https://www.uscp.gov/visiting-capitol-hill/regulations-prohibitions/prohibited-items#:~:text=Prohibited%20Items%20in%20the%20House%20and%20Senate%20Galleries&text=device%2C%20and%20fireworks.-,Mace%20and%20pepper,Aerosol%20containers.

actions which lay forth a specific crime, the intent and forethought to commit said crime, and the assisting of others in the same intended crime. See United States v. Childress, 313 U.S. App. D.C. 133, 58 F.3d 693, 700 (1995), United States v. Ali, 870 F. Supp. 2d 10, 19 (D.D.C. 2012), United States v. Borda, 786 F. Supp. 2d 25, 42 (D.D.C. 2011), United States v. Eiland, 525 F. Supp. 2d 37, 41 (D.D.C. 2007), United States v. Thomas, 525 F. Supp. 2d 17, 22 (D.D.C. 2007), and United States v. Farrell, No. 03-311-1 (RWR), 2005 U.S. Dist. LEXIS 14021, at *12 (D.D.C. July 8, 2005).

Neither law enforcement, nor the Government can produce any evidence of this grand conspiracy as defined by the law which links all January 6 Defendants so as to make all equally culpable. Indeed, there is no evidence, charge, or direct assertion that Mr. Munchel engaged in any conspiracy, nor that he had any intent to do other than protest against what he believed at the time to be a genuine grievance. While Mr. Munchel has been found guilty of U.S.C § 1512(k), that conspiracy goes no further than his co-defendant. It does not, and cannot, encompass more or less than the actions of the two of them. Therefore, any allegation or insinuation of a greater conspiracy must be ignored as the necessary elements simply do not exist.

The Government will no doubt argue for the maximum imposition of sentence by a deviation upward from the guidelines citing to the need for general deterrence and specific deterrence when imposing sentence. The Government will also no doubt argue that this Court must give the greatest consideration to, in short, making an example of Mr. Munchel to present a warning to potential future wrongdoers. This argument falls somewhat flat in the face of the nigh universal conviction rate for all January 6 defendants, regardless of their sentence. If ever there was a deterrence, the universal findings of guilt is it. If that alone is not sufficient, the vilification

of all January 6 defendants in the mass media for the past two years accompanied by the stigmatization and anecdotal warning that they have become is more than sufficient to produce the desired effect. The use of a deviation upward in sentencing to make an example out of Mr. Munchel evinces images of the Gaul's mounting the heads of their enemies to the walls of their cities. In a civilization that prides itself on its justice and equity, such things should be reserved for the likes of murderers, not for those who, at best, acted like children throwing a tantrum.

Specific to this case, the Government will not doubt point to Mr. Munchel's posturing and rhetoric, as well as his entry to the Capitol and its rooms, along with his attire in support of their argument for a deviation upward from the maximum sentence possible. Mr. Munchel's regrettable lapse in judgment which resulted in his rhetoric, posturing, and attire are not in keeping with his normal character. He is not, by nature a violent or emotional man. One need only look to his Pre-Sentencing Report to see that his history bears no resemblance to his current situation. He was swept up in the political mania that infected the nation in 2020 and felt so strongly about his duty as a citizen to participate in the electoral process that he broke from his normal routine and traveled to Washington D.C. to participate in a protest. His behavior and lack of judgment from this point can be seen to be a series of compounding external forces, not the innate character of Mr. Munchel.

### IV.     Character of the Defendant

Mr. Munchel is a loving husband and father-to-be as well as a hardworking contributing member of his community. He evidences what it means to be an American with his love of God, family, and Country. He is gainfully employed and provides for the stability and welfare of his family as well as contributing to the economy of his community. Mr. Munchel has recently

married, evidencing his maturity and mindset to move on past this incident in his life and settle down with his wife and their unborn child, looking to a more productive future.

### V. Sentencing Considerations

Sentencing under 18 U.S.C. § 3553(a) carries four considerations:

1. The need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law;

2. The need for the sentence to afford adequate deterrence;

3. The need to avoid unwarranted sentencing disparities; and

4. Be sufficient, but not greater than necessary.

### VI. The Sentences Available and the Avoidance of Disparity

Mr. Munchel is convicted of the following counts of the Superseding Indictment:

**Count 1:** Conspiracy to Commit Obstruction 18 USC §§ 1512(k) and (c);

**Count 2:** Obstruction of an Official Proceeding and Aiding and Abetting 18 USC §§ 1512(c)(2) and 2;

**Count 3:** Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon 18 USC §§ 1752(a)(1) and (b)(1)(A);

**Count 5:** Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon 18 USC §§ 1752(a)(2) and (b)(1)(A);

**Count 7:** Unlawful Possession of a Dangerous Weapon on Capitol Grounds or Buildings 40 USC §§ 5104(e)(1)(A) and 5109(a);

**Count 8:** Entering and Remaining in the Gallery of Congress 40 USC §§ 5104(e)(2)(B) and 5109(b);

**Count 9:** Disorderly Conduct in a Capitol Building 40 USC §§ 5104(e)(2)(D) and 5109(b); and

**Count 10:** Parading, Demonstrating, or Picketing in a Capitol Building 40 USC §§ 5104(e)(2)(G) and 5109(b).

*United States v. Munchel,* Case No. 21-CR-00118-RCL-1
**DEFENDANT'S SENTENCING MEMORANDUM**
8

Mr. Munchel has reviewed the Pre-sentencing Report (*see* ECF at 207) and believes that the same constitutes a correct calculation of the points and the applicable guidelines and therefore he incorporates the same by reference herein with a final point assessment of fourteen (14). Specifically, Mr. Munchel incorporates the following:

"Based upon a total offense level of 14 and a criminal history category of II, the guideline imprisonment range is 18 months to 24 months. Counts 8, 9, and 10: Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction. Pursuant to USSG §5G1.2(b), the court shall determine the total punishment and shall impose that total punishment on each such count, except to the extent otherwise required by law. Pursuant to USSG §5G1.2(c), if the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law."

(*see* ECF at 207 par. 150-153)

Mr. Munchel would respectfully assert that a deviation downward from the suggested sentencing range of incarceration is warranted for the following reasons:

1. Mr. Munchel has demonstrated his commitment to putting this era of his life behind him by committing to a relationship and fathering a child.

2. A prolonged period of incarceration will have an adverse effect on the economic situation of Mr. Munchel and his family leading to unnecessary debt.

3. A prolonged period of incarceration will cause undue hardship on his spouse as leading up to, and after the birth of the child, her ability to financially provide for herself and her child will be greatly reduced.

4. Mr. Munchel has complied with all conditions of his pre-trial release and has shown a respect for the rule of law while waiting for his case to be adjudicated.

Counsel was unable to locate any comparable cases which contained convictions with the inclusion of 40 U.S.C. §§ 5109. However, counsel was able to locate cases where the convictions consisted of 18 U.S.C. §§ 1512, 18 U.S.C. §§1752, and 40 U.S.C. §§ 5104.

1:21-CR-00037-TNM  1:21-CR-00204-BAH  1:21-CR-00287-TNM  1:21-CR-00223-APM

1:21-CR-00316-DLF  1:21-CR-00619-BAH  1:21-CR-00150-TFH  1:21-CR-00226-CRC

1:21-CR-00263-TSC  1:21-CR-00287-TNM

The sentences carried a disparity of anywhere from 12 to 48 months of incarceration though they were in agreement with 36 months of supervised release and $2,000 of restitution.

### VII. Fines and Restitution

18 USC § 3571(b)(3) provides that the maximum fine for counts 1, 2, 3, 5, and 7 is $250,000 and $5,000 for counts 8, 9, and 10 with a mandatory fine of $100 for each of counts 1, 2, 3, 5, and 7 and $10 for counts 8, 9, and 10 pursuant to 18 USC § 3013 in addition to the consideration of the fines that can be imposed under USSG §5E1.2(c)(3). When imposing fines, the Court should take into consideration the economic situation of Mr. Munchel, the fact that incarceration prevents and will prevent him from gainful employment, and those upon whom the burden of such fines would fall, namely his family who are not part or party to the offenses for which Mr. Munchel stands before this Court. The same is true of the restitution amount in this case pursuant to 18 USC § 3663(a)(3). Therefore, Mr. Munchel would seek a ruling of this Court ordering the lowest possible fine(s) and restitution based on the foregoing considerations.

### VIII. Conclusion

Mr. Munchel has accepted responsibility for his action on January 6, 2020. He is genuinely remorseful for his conduct and acknowledges the same to this Court. Mr. Munchel is

*United States v. Munchel,* Case No. 21-CR-00118-RCL-1
<u>DEFENDANT'S SENTENCING MEMORANDUM</u>
10

well thought of in his community and, aside from two prior misdemeanors, has had no other adverse dealings with the judicial system. In light of the foregoing, a period of 12 months of incarceration, 36 months of supervised release, and $2,000 in fines and restitution is sufficient but not greater than necessary to satisfy the sentencing goals of 18 U.S.C. § 3553(a) and the same should be the ruling of this Court.

Respectfully submitted,

*/s/ Gall*

_____
Joseph W. Allen, MO BAR #57669
1015 W. State Hwy. 248 Ste. I
Branson, MO 65616
Telephone: 417/334-6818
Facsimile: 417/612-7081
joe@mybransonattorney.com
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of August 2023, I filed the foregoing Sentencing Memo by the Court's CM/ECF system. All case registered parties will be served by CM/ECF.

*/s/ Gall*

_____
Joseph W. Allen\