UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 1:21-cr-118 (RCL) |
| ERIC MUNCHEL and : | |
| LISA EISENHART, : | |
| : | |
| Defendants. : | |

**OPPOSITION TO MOTION TO STAY SENTENCING**

Both defendants have been convicted of Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k) (Count One), and Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Two), among other crimes. Sentencing for both defendants is scheduled for September 8, 2023, but defendant Eisenhart has moved to stay sentencing until the appeal in *United States v. Fischer, et al.*, Nos. 22-3038, 22-3039, and 22-3041 (D.C. Cir. June 27, 2022), is resolved. *See* ECF No. 210 ("Def.'s Mot.").[1] The government opposes. The Court should deny the motion and sentence the defendants on September 8, 2023, as planned.

**I.     Background**

On April 18, 2023, after a bench trial consisting of stipulated facts, *see* ECF No. 202, and government exhibits, *see* ECF No. 205, the Court found the defendants guilty on all charges, including Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k) (Count One), and Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2)

---

[1] Defendant Eisenhart asserts that co-defendant Munchel "will join this request," Def.'s Mem. at 1, but Munchel has not filed anything to substantiate that statement. Nevertheless, for purposes of argument and efficiency, the government treats defendant Eisenhart's motion as one joined by defendant Munchel.

(Count Two), *see* Minute Entry for 4/18/23. While the defendants waived all of their jury trial rights, and their appellate rights for Counts Three through Ten, they maintained their "right to appeal the legality, constitutionality, or applicability of" the Section 1512(k) and (c)(2) charges. ECF Nos. 203, 204.

Meanwhile, other January 6 defendants have been litigating the legality, constitutionality, and/or applicability of Section 1512(c)(2) in their cases. Although every other judge in this district has rejected his reading of the statute, Judge Nichols has dismissed Section 1512(c)(2) charges in many January 6-related cases on the theory that the statute requires the defendant to have taken a corrupt and obstructive action with respect to a "document, record, or other object," and the indictments in those cases alleged no such conduct. *See, e.g.*, *United States v. Miller*, No. 21-cr-119 (CJN). In all such cases, the government filed interlocutory appeals of Judge Nichols' dismissals. The first three of those appeals were consolidated into one case, *United States v. Fischer, et al.*, No. 22-3038, No. 22-3039, and No. 22-4041 (D.C. Cir. June 27, 2022).

Ultimately, a majority of a three-judge panel in the D.C. Circuit held that Judge Nichols erred in dismissing the Section 1512(c)(2) charges against the *Fischer* defendants. *See United States v. Fischer, et al.*, 64 F.4th 329 (D.C. Cir. 2023). The panel held that Section 1512(c)(2) contains no requirement that the obstructive acts be done with respect to a document or record and that the alleged actions of the January 6 rioters in the cases before the panel "fall[] comfortably within the plain meaning" of the statute's prohibition. *Id.* at 335–39.

Although Judge Nichols did not reach the *mens rea* required to violate Section 1512(c)(2) because in each case he dismissed the obstruction charge on the *actus reus* alone, the appellate court addressed the *mens rea* issue and splintered on it, specifically the meaning of "corruptly." *See Fischer*, 64 F.4th at 352 n.1 (Walker, J., concurring in part). In the lead opinion, Judge Pan

wrote alone that "the allegations against appellees appear to be sufficient to meet any proposed definition of 'corrupt' intent," *id.* at 339, and discussed—without expressing a preference for—three possible definitions of the word "corruptly," *id.* at 339–40. Judge Walker concurred with Judge Pan's opinion in all respects but one: he disagreed with Judge Pan's decision not to adopt a specific definition of "corruptly" because, in his view, the court "must define that mental state to make sense of (c)(2)'s act element." *Id.* at 351–63 (Walker, J., concurring in part). Judge Walker asserted that the court should "give 'corruptly' its long-standing meaning," which, according to him, "requires a defendant to act with an intent to procure an unlawful benefit either for himself or for some other person.'" *Id.* at 351 (quoting *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)). Meanwhile, Judge Katsas dissented. He interpreted Section 1512(c)(2) as only criminalizing obstructive acts that "impair the integrity or availability of evidence." *Id.* at 363–78 (Katsas, J., dissenting). Accordingly, Judge Katsas would have affirmed the district court's decision to dismiss the indictment, albeit on slightly different grounds. *Id.* Judge Katsas declined to endorse a specific definition of "corruptly," but he expressed that "the various possibilities that [his] colleagues suggest do not inspire much confidence." *Id.* at 378–82.

As Judge Bates summarized in *United States v. Sheppard*, No. 21-cr-203 (JDB), another January 6 case, "*Fischer's* primary holding as to the *actus reus* element of § 1512(c)(2) is clear, but any potential holding as to the *mens rea* element is less so." *Sheppard*, ECF No. 105 at 4-5. "Each member of the *Fischer* panel wrote separately about the proper definition of the term 'corruptly.' None of those portions were joined by any other judge, and thus, there is no clear majority opinion on the definition." *Id.* at 11.

The *Fischer* defendants appealed to the Supreme Court, and the D.C. Circuit has stayed the issuance of its mandate pending the Supreme Court's decision. *See Fischer, et al.*, Nos. 22-

Page **3** of **9**

3038, 22-3039, and 22-3041. The Supreme Court has yet to grant or deny *certiorari*. Here, the defendants seek to delay sentencing indefinitely until the Supreme Court either grants *certiorari* and issues a decision or until the Supreme Court denies *certiorari* and the D.C. Circuit issues its mandate. *See* Def.'s Mot. Meanwhile, the question of the *mens rea* required to violate Section 1512(c)(2) is being addressed head-on in another January 6 case pending on appeal, *United States v. Robertson*, No. 22-3062 (D.C. Cir.).

## II.    Legal Standard

The government acknowledges that district courts generally have power and discretion to set their own calendars, but certain limits apply. Fed. R. Crim. P. 32(b)(1) requires that "[t]he court must impose sentence *without unnecessary delay*." *Id.* (emphasis added). While no statute or common law precedent dictates *precisely* when sentencing must occur, *see Betterman v. Montana*, 578 U.S. 437, 447-48 (2016) (holding that the Sixth Amendment Speedy Trial Clause does not apply to the period between conviction and sentencing but noting that "due process serves as a backstop against exorbitant delay"), sentencings in this district typically occur within approximately 90 days of a guilty plea or trial verdict.

A defendant cannot unilaterally waive the right to a speedy sentencing. *Cf. Zedner v. United States*, 547 U.S. 489 (2006) (holding the same with respect to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*.). Just as defendants have due process rights to speedy adjudication of their criminal cases, *see Betterman*, 578 U.S. at 447-48, the government and public have interests in speedy sentencing too. Consequently, in scheduling sentencing, the Court must consider the impact of any delay on the purposes behind criminal sentencing, which are "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011) ("[A]

court must fashion a sentence 'to achieve the[se] purposes . . . to the extent that they are applicable' in a given case.") (quoting and citing 18 U.S.C. § 3551(a)).

### III. Argument

No legitimate basis exists to grant the defendants' request for an indefinite stay of sentencing. Here, the scheduled sentencing date of September 8, 2023, is 143 days after the Court convicted the defendants on April 18, 2023. Thus, the defendants have already had over 50% longer between conviction and sentencing as typical defendants, and the defendants have failed to show how further delay is *necessary*, *see* Fed. R. Crim. P. 32(b)(1), especially in light of statutory law to the contrary, *see* 18 U.S.C. § 3143(b), *discussion infra*.

The defendants rely on the possibility that the law might change in the future due to the pending appeal in *Fischer*. But the procedural and statutory rules concerning sentencing anticipate this argument, and the rules do not support an indefinite stay in this situation. In fact, the rules require the Court to deny the defendants' motion. In 18 U.S.C. § 3143(b), Congress established that where a defendant has a potentially meritorious argument on appeal, the Court should *sentence the defendant first* and then the defendant may seek a *stay of the imposition* of the sentence, as well as release, pending the outcome of his or her appeal. *See id*. To achieve this temporary reprieve, the defendant bears the burden of showing that the question he or she raises on appeal "raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial . . . or (iv) a reduced sentence to a term of imprisonment less than the total of the time served plus the expected duration of the appeal process." *Id.* Here, the defendant asks the Court to put the cart (a stay) before the horse (sentencing).

Proper procedure and timing aside, the defendants' argument in favor of a stay relies entirely on speculation and hope. The Supreme Court *might* grant *certiorari* in *Fischer*. If it does,

the Supreme Court *might* reverse or modify the D.C. Circuit's holding. And that reversal or modification *might* come out in a way that undermines the Court's convictions in this case. Of course, it is equally possible that any one of those things does *not* happen. In the meantime, *Fischer* remains binding precedent and the Court's convictions stand. The possibility that something might change in the future is not good cause to indefinitely delay sentencing. If it was, a large portion of the Court's criminal docket would be frozen.

The defendants in this case are no differently situated than any defendant convicted of violating the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(c), which defendants constantly appeal and which the Supreme Court addresses on a seemingly near-annual basis, *see, e.g.*, *Wooden v. United States*, 142 S. Ct. 1063 (2022); *Borden v. United States*, 141 S. Ct. 1817 (2021); *Shular v. United States*, 140 S. Ct. 779 (2020). Nevertheless, courts in this district—and indeed, around the country—routinely sentence ACCA cases within three to four months of conviction, even when potentially impactful ACCA-based appeals are simultaneously pending before the Supreme Court in other cases. If ACCA defendants are sentenced on the normal schedule in those circumstances, as they routinely are, these defendants should be too.

Moreover, an indefinite delay is unfair to the public and the government, which have interests in speedy justice just like criminal defendants do. Indulging the defendants' request to delay sentencing undermines each of the goals of sentencing: "retribution, deterrence, incapacitation, and rehabilitation." *Tapia*, 131 S. Ct. at 2387. Here, the negative impact that an indefinite delay will have on the *deterrent* effects of the sentences particularly—both on these defendants specifically and the public generally—is especially alarming, given the defendants' failures to express remorse and the current political climate. Delaying sentencing would undermine deterrence and the public's respect for the rule of law. The country cannot endure a repeat of

January 6, from these defendants or others, and indefinitely delaying sentencing makes such an outcome incrementally more likely.

Additionally, the defendants' Section 1512 convictions (*i.e.* Counts One and Two) do not exist in a vacuum. Together, the defendants have been convicted of seven other serious crimes for which they face sentencing. The public and the government have strong interests in the Court imposing timely sentences for *those crimes* too, regardless of the outcome of the *Fischer* appeal concerning the *actus reus* required to violate Section 1512(c)(2) (here, Count Two) and the parallel *Robertson* appeal about the required *mens rea*. If the Court granted the defendants' request for an indefinite stay, the Court would be implicitly discounting the public and government interests in finalizing the resolution of those other crimes.

Judge Bates has denied motions based on similar arguments in both *United States v. Brock*, 21-cr-140 (JDB), ECF No. 107, and *United States v. Sheppard*, No. 21-cr-203 (JDB), ECF No. 105. While the procedural postures and motions in those cases differed from this one, Brock's and Sheppard's arguments echoed those raised by these defendants and Judge Bates' analyses are instructive.

Unlike these defendants, Brock had already been sentenced and incarcerated on his Section 1512(c)(2) violation (among other crimes) and had filed his appeal. *See id.* at 1. Following the proper procedure, Brock moved for release pending the resolution of his appeal, pursuant to 18 U.S.C. § 3143(b). *See Brock*, ECF No. 107. Brock's appeal depended on how the Supreme Court and D.C. Circuit resolved *Fischer*. *See id.* at 5-8. As Judge Bates explained in denying Brock's motion, the Section 1512(c)(2) "*actus reus* issue—whether § 1512(c) applies to [Brock's] charged conduct—is no longer a 'substantial question of law' likely to result in reversal because the D.C. Circuit already issued a binding ruling on this issue and decided . . . that 1512(c)(2) prohibits all

acts that obstruct, influence or impede any official proceeding or attempt to do so." *Brock*, ECF No. 107 at 6 (internal citations omitted, emphasis in original). This Court should follow Judge Bates, recognize that *Fischer* is binding precedent that renders the *actus reus* question settled law, and deny the defendants' request an indefinite stay of sentencing.

Meanwhile, the defendant in *Sheppard* made a slightly different request. Like Brock and these defendants, Sheppard had been convicted of violating 1512(c)(2). In contrast, however, Sheppard moved to continue sentencing long enough for him to submit a motion for a new trial, arguing that *Fischer* rendered the jury instructions in his case improper. *See Sheppard*, No. 21-cr-203 (JDB), ECF No. 105. In a lengthy opinion in which he thoroughly explicated *Fischer*, Judge Bates denied the motion. *See id.* Ultimately, Judge Bates concluded that

> At its core, *Fischer* was a case with a clear holding on the *actus reus* element of § 1512(c)(2), and Sheppard's attempt to also extract a holding on the statute's *mens rea* element pushes *Fischer* and the boundaries of *Marks* too far. [. . .] *Fischer* does not provide a controlling definition of "corruptly" that this Court would be required to use in a new trial. Hence granting Sheppard's request for leave to file a motion for a new trial on that basis would be futile as there is no likelihood of success on the merits.

*Id.* at 18. Although Judge Bates recognized that the *mens rea* required to violate Section 1512(c)(2) is potentially a live, substantial issue, *see id.* at 8 (citing *Robertson*), he concluded that did not justify an indefinite stay of sentencing either because Brock's conduct was independently unlawful and aimed at helping former President Trump retain power, and therefore "'would satisfy even the most stringent definition of corruptly,'" *id.* (internal citation to *Fischer* omitted).

This Court should follow Judge Bates and deny the defendants' motion for an indefinite stay of sentencing while they await the Supreme Court's *certiorari* decision—and potentially its ruling—in *Fischer*, as well as the D.C. Circuit's holding in *Robertson*. If the Supreme Court takes *Fischer*, it will be to decide the *actus reus* question at its heart, on which a majority of the D.C.

Circuit panel agreed, not the *mens rea* question on which the D.C. Circuit fractured and that is being litigated in *Robertson*. In the meantime, the D.C. Circuit's *Fischer* decision rejecting Judge Nichols' view of Section 1512(c)(2), reversing his dismissals, and joining the interpretation of every other judge in this district including this Court, remains binding precedent. *Fischer*, 64 F.4th 329. These defendants can raise the *Fischer* and *Robertson* issues on appeal if they wish, but ongoing litigation in other cases does not justify an indefinite stay of sentencing.

### IV. Conclusion

For the reasons stated above, the Court should deny the defendants' motion, ECF No. 210, and conduct sentencing on September 8, 2023, as scheduled.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney, Detailee
Florida Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
(813) 274-6370
Michael.Gordon3@usdoj.gov

*/s/ Rebekah Lederer*
REBEKAH LEDERER
Assistant United States Attorney, Detailee
Pennsylvania State Bar No. 320922
601 D St., NW
Washington, D.C. 20001
(202) 252-7012
rebekah.lederer@usdoj.gov