**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CR-00118-RCL** |
| | ) | |
| **LISA MARIE EISENHART** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**DEFENDANT LISA EISENHART'S RESENTENCING STATEMENT**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

On January 13, 2025, the Department of Justice filed its Resentencing Statement for the resentencing hearing of Ms. Eisenhart on January 16, 2025.

In a case now consisting of two "A" misdemeanor convictions and three "B" misdemeanor convictions, the Government is demanding a sentence of 30 months, to be accomplished by the imposition of consecutive terms of 12 months on each of the two "A" misdemeanors, followed by another consecutive term of 6 months on the three "B" misdemeanors which are run concurrent only to each other.

This recommendation is abusive to the degree that it is comical.  The Court should ignore the Resentencing Statement in <u>all</u> respects since it is not meant to advocate for a just end to this matter.

Ms. Eisenhart submitted her case to a stipulated bench trial and was convicted on two felony counts – a conspiracy count and substantive count involving violations of Sec. 18 U.S.C. Sec. 1512 – and five misdemeanors.

The Government committed reversible error when it opted for a first-of-its kind exercise of prosecutorial discretion by charging violations of an obstruction of justice counts on facts of this and other January 6 cases.  The Government plainly and deliberately misread the text of the statute for the singular purpose of sweeping as many individuals with the dragnet of criminal statute that came with a maximum potential sentence of 20 years where the *actus rea* in most instances was indistinguishable from misdemeanor conduct covered by other statutes.

That was the Government's error – not Ms. Eisenhart's error.

On March 6, 2023, Ms. Eisenhart moved to dismiss Counts One and Two charging her with felony violations of 18 U.S.C. Sec. 1512(c)(2) and 1512(k). See, ECF No. 176. The Government opposed that motion, and on April 18, 2023, this Court erroneous denied that motion. See, ECF No. 200.

In the Government's Sentencing Statement dated August 13, 2023, the Government's Guidelines calculation sought the application of two Special Offense Characteristics under Sections 2J1.2(b)(1)(B) and 2J1.2(b)(2) relating to interfering with the "administration of justice." Those Specific Offense Characteristics added 11 levels to the Adjusted Offense Level calculation, increasing Ms. Eisenhart's recommended guideline range from 15-21 up to 57-71 months before acceptance of responsibility.

In *United States v. Brock*, 94 F. 4th 39 (D.C. Cir. 2024), the Circuit Court held that the application of these two enhancements was yet another error advocated by the Government in cases arising from the events of January 6.

Again, the Government and the Court erred – not Ms. Eisenhart.

On September 8, 2023, this Court sentenced Ms. Eisenhart to 30 months of custody, to be followed by 36 months of supervised release.

And now, notwithstanding the litany of errors committed by the Government in its years-long prosecution of Ms. Eisenhart -- now coming to a close with a collection of misdemeanor convictions -- the Government comes before the Court demanding that it reimpose the exact same sentence that was imposed previously.

Felonies … misdemeanors … reversals … resentencing – all of it that is meaningless according to the Government because the same sentence should be imposed regardless of the errors that have infected the case from the start.

For the Government, 30 months is the "right" punishment, and problems like felonies v. misdemeanors, convictions for conduct that was not criminal, and the application of Sentencing Guidelines enhancements that didn't apply are all just inconvenient distractions to be waved off now.

A historical retrospective about "How did we get here?" is warranted in light of the Government's demand.

How is it that it came to be accepted that sentences in the range of 3-5 years are "correct" and established the "heartland" for sentencing even non-violent January 6 offenders?

On July 19, 2021, in *United States v. Hodges*, 21-cr-00188 (RDM), following a guilty plea to one count of violation Sec. 1512(c)(2), Judge Moss sentenced the defendant to 8 months in custody. Because the statute had never before been charged in this District, Judge Moss asked the Probation Office to survey other districts for comparable cases.

His Minute Order dated July 13, 2021, reflects a base offense level of 14, a +3 Specific Offense Characteristic enhancement – deemed to be an error in *Brock* – and no other adjustments other than for acceptance. The recommended guideline range was 15-21 months.

The survey by Probation of other districts revealed only 31 cases resulted in the guideline range of 15-21 months under Sec. 2J1.2, and in only 9 of

those cases was Sec. 1512(c)(2) the count of conviction.  In Judge Moss' Minute

Order he quoted the report to him from Probation:

> Of the 31 cases, in seven (22.6%) the sentence was within the guideline range. The average sentence in those cases was 19 months …. Two cases (6.5%) were above range: one upward departure to 36 months and one upward variance to 48 months. The remaining 21 cases (71.0%) were below range…. The average sentence in those cases was seven months …. One case was downward departure to 14 months, another was a government departure to probation, and the remaining case was a government variance to six months. The remaining six cases were substantial assistance cases. In order to provide a more narrowly-tailored analysis, we then limited our analysis to the nine cases in which section 1512(c)(2) was one of the statutes (or the only statute) of conviction. Of those nine cases, in two the sentence was within the guideline range. The sentences were 15 and 21 months. There was one upward departure to 36 months. Three cases were below range variances. The average sentence in those cases was 10 months …. One case was a downward departure to 14 months."

Based on this analysis of other sentences in Sec. 1512(c) cases, Judge

Moss determined that a sentence of 8 months was appropriate for Mr.

Hodgkins.

But, by July of 2021 when Mr. Hodgkins was sentenced, the Sec.

1512(c)(2) charge was the "Go To" offense used by the Government in any case

where there was no overt acts of physical violence directed at law enforcement.

Realizing that there was a possibility that sentences equivalent to those given

in misdemeanor cases might become standard as more January 6 cases were

resolved, the Government adjusted its tactics.  The second case to be sentenced

was by this Court – *United States v. Jacob Chansley*.

Like Mr. Hodgkins, the lead charge against Mr. Chansely was a violation

of Sec. 1512(c)(2).  Unlike Mr. Hodgkins, when the Government extended a plea

offer to Mr. Chansley it included required stipulations that the +3 and +8 level

Specific Offense Characteristics would apply, making his Adjusted Offense

Level 25 before acceptance of responsibility.  It also contained a required stipulation by Mr. Chansley that the recommended Guideline Range was 41-51 months.

At sentencing, the Government sought a sentence at the top of the range – 51 months – and Mr. Chansley's counsel requested a sentence at the bottom of the range.  This Court imposed a sentence of 41 months based explicitly on the resolution that the parties had agreed upon in the Plea Agreement.

From this experience, the Government adjusted its approach to fit the outcome it achieved with respect to Mr. Chansley, and adopted this as its template for resolving January 6 cases thereafter.  Plea offers extended in cases with a charged Sec. 1512(c)(2) count all required that the Defendant stipulate to both of the Specific Offense Characteristics totaling an additional 11 levels, and that the Guideline Range for a defendant in Criminal History Category 1 would be 41-51months.  The undersigned counsel knows this to be true because he has received numerous such plea offers for his own clients, and has reviewed dozens of such plea offers made to other defendants not represented by him.

Some Judges of this Court have departed below the stipulated guideline range based on Sec. 3553(a) factors, but many imposed sentences within the 41-51 month range that Government forced defendants to stipulate to as a condition of the agreement.  *Brock* put a halt to this practice by holding, as defense counsel had long maintained (including the undersigned) in cases that went to trial that the two guideline enhancements relating to the "administration of justice" did not apply.

Defense counsel were correct, the Government was in error.

But that is how it came to be accepted, prior to *Brock,* that sentences between 3 and 5 years were the "correct" result – the Government reaction to Judge Moss' 8 month sentence in the very first case to be sentenced, and then a shift in tactics to force a defense stipulation to guideline enhancements that didn't even apply under the facts.

Over the ensuing months that followed a few dozen cases with guilty pleas resulted in sentences between 3 and 5 years for violations of Sec. 1512(c)(2). Those sentences became the "comparative" cases for purposes of avoiding unwarranted sentencing disparities under Sec. 3553(a) – all relying upon each other for self-reinforcing justification that such a sentence was appropriate for offenses related to the events of January 6.

But all of this came crashing to a halt with the recognition of the errors as found at the appellate level in *Brock* and *Fischer*.

And this brings the story back to Ms. Eisenhart. The Government is convinced that 30 months is the "right" sentence in this case no matter what sequence of reversible errors led to that sentence previously. It is so convinced of this fact that it asks this Court to impose consecutive sentences on misdemeanor counts – a step for which there appears to be no precedent in cases related to the events of January 6.

As this Court will recall, when it granted Ms. Eisenhart's motion to remain released pending appeal, this Court noted that in the event the Supreme Court ruled in favor of the defendant in *Fischer*, Ms. Eisenhart's case would be remanded for resentencing. The Court determined that it was not

likely to sentence her to a term of imprisonment greater than 10 months, which would have been the combined total of the time she has already served in pretrial detention, as well as the anticipated period between her surrender and the expected resolution of her appeal following the outcome in *Fischer*. Denying her release pending appeal would likely lead to her "over-serving" her sentence should her Sec. 1512 counts be reversed.

This Court should sentence Ms. Eisenhart to time served – the approximately 3 months she was held in custody pending trial prior to this Court granting her release on terms and conditions of pretrial release.

Since the date of her conviction of a felony based on a statute that did not apply to the facts of her case – she was charged with conduct that wasn't even a crime -- Ms. Eisenhart has suffered in her personal and professional life as follows:

- She will incur the cost of an attorney in to petition to get her nursing license reinstated, but this effort will be delayed an indefinite time due to her lack of funds to retain counsel to assist her.

- Because her nursing license has been suspended for more than one year, she will be required to attend and complete a "reentry" class at a cost to her of approximately $4,000.  This course takes approximately 6 months to complete.  During this time her income will continue to be limited to service jobs such as the part-time waitressing job she now has.

- Since her nursing license was revoked, she has been chronically "under-employed" with an income far short of what her earning potential would have been based on her education, certification, and experience.  She

currently earns $100-300 a week as a part-time waitress, largely based on tips. Prior to losing her license because of the felony conviction, she earned $1400-1600 per week as a skilled nurse.

- Because she is now 60 years old there are some nursing jobs that have physical demands she is likely no longer able to do perform, and that will limit the number of jobs she might be considered for.

- She no longer has health insurance because she has not been able to find employment in an employer who will hire felons on a full-time basis and provide them with employment benefits such as health coverage. She has suffered injuries during a fall for which she was unable to seek out what she thought was the needed medical treatment due to her inability to pay for that treatment. Some physical consequences of that injury have limited the kinds of jobs she can seek as an unskilled felon.

- Her felony conviction prevented her from obtaining any employment in the healthcare field of any kind. At one time in the past she was licensed as a nurse in California. She voluntarily let that license lap during a period when she lived elsewhere. Notwithstanding the fact that her license was not active, the California Board of Nursing acted on a complaint reporting her felony conviction and imposed a sanction. They placed in a database of "do not hire" clinicians. The California Board has advised her that even if her felony conviction is vacated, she must still wait three years before she can even apply for reinstatement of her license, and even then reinstatement is not mandatory.

- Her employment as a "Door Dash" food service delivery driver was terminated after her name appeared on a commercial database used by employers to conduct background checks. That same database recommends that she not be hired by any business that receives revenue from Medicare or Medicaid which dramatically reduces the number of healthcare related employers who might hire her now even without a felony.

- The presence of a felony conviction that turns up on commercial databases disqualifies her from renting an apartment or home in a neighborhood that she approves of. She currently resides with an adult son in a one-bedroom apartment rented in his name. Her current conditions of release require that she live with her Third Party Custodian and the one bedroom apartment is all they can afford together.

- Ms. Eisenhart has spent more than four years subject to either conditions on Pretrial Release or conditions on release pending appeal. For a period of time those conditions even included a "No contact" order with respect to her son and co-defendant Eric Munchel. Her felony charge has meant the Bureau of Prisons has denied her visitation privileges with her son who is still in custody.

- Her felony convictions have prevented her from doing volunteer work at certain local charities because of their rules about not allowing convicted felons to work as volunteers, including charities connected to the church she attends. She was also denied employment at a nursery where her granddaughter works because of the felony conviction.

- Had she not been wrongfully charged with the felonies, she would not have lost nursing license based on misdemeanor convictions alone.  She would still be employed, financially stable, physically sound, and able to participate fully in her church.

- She has been advised that as long as the felony conviction comes up on background checks from federal and state databases, she may never be able to work as a nurse even if she is able to reinstate her license.  There is no single process to have her named removed from commercial databases used by companies to run background checks, and there is no way to predict when the companies that populate those databases with public records information will correct the entries about her to show that she has no felony convictions.

Based on all of the above, this Court should sentence Ms. Eisenhart to a sentence of "time served" to be followed by one year of supervised release on all counts, with the sentences to run concurrently, and that the Supervised Release term be deemed to have been successfully completed by virtue of her four years already served on terms and conditions of release prior to trial and pending sentencing.


Dated: January 15, 2025                              Respectfully submitted,


                                                    _____
                                                    William L. Shipley, Jr., Esq.
                                                    PO BOX 745
                                                    Kailua, Hawaii 96734

Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com